## S. & M. ALLEN *vs.* THE MERCHANTS BANK OF NEW-YORK.

Where a *bill of exchange*, payable at a *distant place*, is deposited with a *bank* for collection, without any agreement for compensation, the only obligation incurred is to forward the bill in due season to a *bank* or other suitable agent at the place of payment, with directions to take the necessary measures to obtain payment.

When the bill is thus forwarded, and the bank receiving it places it in the hands of a *notary* to make presentment for acceptance, which is made and refused, and the notary omits to give notice of non-acceptance, whereby the debt is lost, an action will not lie against the bank where the note was originally deposited, but the holder must seek his remedy against the notary.

It is competent for the holder to prove, if there has been no judicial determination upon the point, that by the *usage* and *custom* of the place, a *bank* thus receiving a note for collection, incurs the obligation to answer for the negligence or omission of the bank, notary, or other agent to whom the bill is forwarded.

The enquiry, however, is not to learn the *opinion* of traders and merchants in respect to the law of the case, but to ascertain the *usage* or *practice* in the course of mercantile business in such cases : that is, what is the *practice* as generally understood by merchants, and as recognized and acquiesced in by the banks.

ERROR from the superior court of the city of New-York. This was an action of *assumpsit*, brought to recover the amount of a bill of exchange, drawn in New-York on a mercantile house in *Philadelphia*, and deposited by the plaintiffs with the Merchants bank for collection, which was lost to the plaintiffs in consequence of the omission to have the bill protested for *non-acceptance*, and notice thereof given to the endorsers. On 26th June, 1830, F. I. Spooner, at the city of New-York, drew a bill of exchange on Messrs. Boller & Baker, of Philadelphia, for $600, payable five days after date to his own order. He endorsed the bill to James M. Gould, who sold it to the plaintiffs and endorsed his name upon it. The

plaintiffs, on the day of its date, deposited the bill *for collection* with the *Merchants Bank*, who sent it to the *Philadelphia Bank* in the city of Philadelphia. On 28th June, the Philadelphia Bank delivered the bill to its notary, who, on the same day, presented it to the drawers for acceptance, which being refused, he *noted* the bill for non-acceptance, and returned it to the bank. On *Saturday*, the *third* day of *July*, it was again delivered to the notary, to be presented for payment; it was presented, and payment being refused, the notary protested the bill and sent notices of non-payment per mail, under cover, to the cashier of the Merchants Bank, directed to the drawer and the Messrs. Allen. On the *sixth* of July, the Messrs. Allen received the notice of non-payment, and on the *seventh* gave a similar notice to *Gould*, the endorser. The plaintiffs brought a suit against Gould, and *failed*, on the ground of want of notice to him of the *non-acceptance* of the bill, and they then commenced their suit against the Merchants Bank, claiming to recover the amount of the bill, and the costs and charges of the suit against Gould, on the ground that notice of that suit had been given to the Merchants Bank, and their aid requested in the prosecution. The plaintiffs proved that Gould held securities in his hands deposited with him by Spooner to ensure the payment of the bill, which he surrendered after sufficient time had elapsed to receive notice of non-acceptance. Spooner became insolvent on the *second* day of *July*. The plaintiffs attempted to prove a *usage* or *custom* in the city of New-York that when the banks there receive a bill or note for collection, payable out of the city, they become responsible for the diligence of the banks to which they transmit the bill or note, and also for that of the agents employed by such banks in the taking of the necessary measures to charge the parties to the bill or note, in case of its dishonor. They accordingly called a number of *merchants* and *brokers*, who testified that such was their *understanding* of the matter, and such their *opinion* as to the obligation incurred by the banks. On the other hand, a number of officers of the banks in the city of New-York testified, that such was *not* the *understanding* of the banks; that the receiving of negotiable paper, payable out of the city,

*margin:* UTICA, July, 1836.

Allen
v.
Merchants
Bank of N. Y.

for collection, was deemed a favor to the customers of the banks; and that the only obligation incurred by the banks in such cases was, to transmit the paper to proper agents in due season for collection. The plaintiffs wholly failed to prove any thing like a *usage* or *custom* recognized by the banks, by their acknowledgment of liability and payment of losses incurred through the want of diligence of the banks to which negotiable paper was transmitted, or the want of diligence of the agents employed by such banks. On the part of the defendants, it was proved that the Bank of Philadelphia, and the notary employed by it, were distinguished for punctuality and diligence in the transaction of business; and further, that by the *law merchant of Pennsylvania*, it is not necessary to present a bill or note like the one in question for *acceptance*, and to give notice of non-acceptance, for the purpose of charging the parties to such bill or note; that it is sufficient if it be presented at maturity for *payment*, and if not paid, that notice of non-payment be given.

Mr. Justice *Oakley* charged the jury, that the defendants, upon general principles of law, and independent of any custom or usage, or of any agreement express or implied, were only bound to transmit the bill to Philadelphia in due time and to some competent agent; and were not liable for any negligence or omission of such agent in giving notice of the *non-acceptance* of the bill. That it was the duty of the jury to enquire whether such usage or custom existed in the city of New-York as was alleged on the part of the plaintiffs, and in weighing the evidence which had been given, they must distinguish between a *usage* or *custom*, and any *general understanding* on the subject, which prevailed among men of business in the city; that to establish the usage or custom claimed by the plaintiffs to exist, it must appear that the practice of the banks had been generally in conformity to such alleged usage, and for so long a period as to have become generally known; that it did not appear to him, from the evidence, that there had been any such practice on the part of the banks, as no case of the kind had before occurred; but it was for them to determine whether any such practice or usage existed. If they should find that such usage or

custom did not exist, they would then inquire whether there was any *mutual understanding* or any agreement between the defendants and their dealers generally, or between them and the plaintiffs particularly, that they were or would be responsible for the conduct of the bank or notary abroad in cases of this kind ; that if they should find that no such understanding or agreement existed, then the defendants were not liable, although the jury should find that a general and notorious understanding existed among men of business in the city of New-York that the banks there were responsible in the manner claimed by the plaintiffs. To this charge the plaintiffs excepted. The jury found for the defendants, on which judgment was entered. The plaintiffs sued out a writ of error.

*S. A. Foot,* for the plaintiffs in error, insisted that by receiving the bill for *collection,* the defendants assumed the duty of protesting the bill and giving notice in case of its dishonor. He also insisted that the *usage* or *custom* claimed on the trial to exist in the city of New-York, in respect to the liability of banks in cases of this kind, was fully proved ; that the general understanding in the mercantile community, in respect to a particular branch of mercantile business, constitutes a commercial usage, and ought to be enforced as a rule of action between parties engaged in such business, especially when it appears that reliance had been placed upon it by one party, and the other has given no public expression of dissent. He contended that the evidence adduced on that subject was the strongest that could be given of a mercantile usage, (7 *Cowen,* 202; 7 *Johns. R.* 385; 1 *Caines,* 43 ; *Doug.* 512,) and that therefore the judge erred in instructing the jury to disregard the proof that a general and notorious understanding existed among men of business, that banks were responsible in cases of this kind.

*G. Wood,* for the defendants in error, insisted that the *understanding* of the witnesses as to the effect of a particular transaction, or their *opinions* as to the construction of an implied contract, cannot alter its legal operation ; that although the

*[margin: UTICA, July, 1836. Allen v. Merchants Bank of N. Y.]*

UTICA,
July, 1836.

Allen
v.
Merchants
Bank of N. Y.

opinion or understanding of dealers in a particular trade or business, as to the meaning of terms or other matters relating to such business, which are constantly occurring in practice, may be evidence of such practice and consequently of *usage*, yet their abstract opinion in relation to a legal liability, resulting or supposed to result from a particular transaction, which legal liability has never been enforced or submitted to in practice, is no evidence of *usage*. He contended that the conclusion of law upon the facts of this case must be that the bill of exchange was left merely for *transmission* to a bank at Philadelphia, or to some agent of the defendants there, and not that the defendants assumed to do themselves what might be necessary in respect to the bill further than to transmit it seasonably for due presentment; that the plaintiffs would be presumed to know, that in the ordinary course of business the defendants would transmit the bill to a bank at Philadelphia, and that the bank there would place it in the hands of a notary for presentment, and with such knowledge they would be considered in law as having consented that the business should be thus transacted. That the bank at Philadelphia and the notary there became the agents of the plaintiffs, as much as if appointed by themselves; and the defendants having transmitted the bill in due season, and placed it in proper hands, were not responsible for the acts or omissions of those sub-agents, any more than an *attorney in fact* is responsible for the negligence of an *attorney at law* employed by him to prosecute a suit for his principal, provided that the characters of the sub-agents were unquestionable for skill, diligence and fidelity, which in this case have not been questioned.

*By the Court*, NELSON, J.    The plaintiffs in error claim a reversal of the judgment below upon two grounds: 1. That the bill of exchange, being deposited with the defendants and received by them for *collection*, they thereby assumed the duty of protesting and giving notice of its dishonor; and 2. That a general understanding in the mercantile community, in respect to a particular branch of mercantile business, constitutes a commercial usage, and ought to be enforced as a rule of action between parties engaged therein, when, one party has

acted upon the faith of it, and the other has given no evidence of a dissent.

UTICA,
July, 1836.

Allen
v.
Merchants
Bank of N. Y

The first proposition is undoubtedly correct, and is the law of this court as decided in the case of *Smedes* v. *The Bank of Utica*, 20 *Johns. R.* 372, 3 *Cowen*, 663, and *M'Kinster* v. *same*, 9 *Wendell*, 46, and 11 *id.* 473. The only difficulty here is in bringing this case within the rule. A note or bill of exchange left at a bank, and received for the purpose of being sent to some *distant place* for collection, would seem to imply upon a reasonable construction no other agreement than that it should be forwarded with due diligence to some competent agent, to do what should be necessary in the premises. The language and acts of the parties fairly import so much, but nothing beyond it. The person leaving the note is aware that the bank cannot personally attend to the collection, and that it must therefore be sent to some distant or foreign agent. The extensive correspondence of banks in money matters enables them to make the transmission with more facility and greater convenience than it can be done by individual holders. The service is done by the banks without compensation, and is looked upon as a favor to their customers. There seems to be therefore nothing in the nature of the transaction that can reasonably imply an assumption for the fidelity of the agent abroad. The holder is not without remedy, because the foreign bank or notary is responsible to him for any default. The agents abroad become his agents in the collection. In the case of *The Bank of Washington* v. *Triplett & Neale*, 1 *Peters*, 50, the defendants left a draft with the Mechanics Bank in *Alexandria*, to be transmitted to a bank in *Washington City* for collection. Chief Justice Marshall, in delivering the opinion of the court, said that the bill was not delivered to the Mechanics Bank for collection, but for transmission; that the bank in Washington became the agent of the holder; that the Mechanics Bank performed its duty by transmitting the bill, and the whole responsibility of the *collection* devolved on the bank which received it for that purpose. He further remarks, that the " deposit of a bill in one bank, to be transmitted for collection to another, is a common usage of great public convenience, the effect of which is well understood. This

transaction (alluding to the facts above stated) was unquestionably of that character."

It was undoubtedly competent for the plaintiffs to have proved, that by the custom and usage of banks with their customers, the mere deposit of a bill payable at a distant place, like Philadelphia, and reception of it for transmission and collection, imposed upon the defendants the obligation to answer for the negligence or omission of the bank, notary, or other agent to whom the bill was transmitted. This is the foundation of commercial law, and whenever that law is silent or doubtful upon a question that arises, and should be settled in conformity to its principles, evidence of the usage and custom of merchants is admissible. 2 *Burr.* 1216, 21. *Chitty on Bills,* 37, 95, 110. In the case of *Stone* v. *Rawlinson, Willes,* 559, where it was first decided that an executor or administrator might transfer, by endorsement, a promissory note payable to the order of their testator or intestate, Chief Justice Willes said, there being no judicial determination upon the point, traders and merchants of undoubted credit were consulted, and all agreed that it was the constant practice thus to transfer notes ; and the point was decided upon this usage and the evidence of it. See also 2 *Douglas,* 653, *n.* The inquiry in these and the like cases, however, is not after the *opinion* of traders and merchants, in respect to the law upon a given mercantile question, but after the evidence of a fact, to wit, the usage or practice in the course of mercantile business in the particular case. Independently of this usage, merchants are no more permitted by courts to testify to the commercial law, than other individuals. Their understanding of the usage is given, which usage may be the rule of the case to be decided. This system of customs is of mercantile invention, devised for the convenience of business, and embodied into the common law for the benefit of trade and commerce. After the rule has been recognized at law, it is no longer under the control of mercantile usage, and the adjudication is the proper evidence of it. Before it has been thus recognized it turns upon the fact of mercantile usage, and then the testimony of merchants affords the best proof of it. The usage being the foundation of the law in this respect, must of course precede the rule, and

unless proof can be given of it, no such rule or law exists—
the common, not the mercantile law, must then define and
regulate the rights and obligations of the parties.  Traders
and merchants are quite competent to prove, from their own
knowledge as well as from the information derived through
others in the course of trade, the *practice* in respect to a partic-
ular branch of business; but if none exists, their conjecture
about what it would be, in a given case, though the chances
of its correctness might be greater than that of others out of
their line of business, is obviously too problematic to become
the foundation of an established rule of law.  Courts, for the
convenience of trade and commerce, frequently follow mer-
chants in their usages and customs; but neither the conven-
ience of trade nor a judicious administration of the law would
justify the taking the opinion of traders and merchants in ad-
vance, and incorporating them into the commercial law as
permanent rules of future action.  We have before said, that
when recognized by judicial determination it can never be
moulded, as in usage or custom, by merchants, in subserviency
to the convenience of trade and commerce.  It then becomes
fixed and unalterable, except by legislative authority.  The
counsel for the plaintiffs in error cited upon this point some in-
surance cases, supposed to contain analogous principles in his
favor.  We have looked into them, and are of opinion they do
not support him, but on the contrary confirm the views of the
court below.  In each case it was the usage and custom of
the trade that was permitted to be proved and to influence
the decision of the cause.  *Smith* v. *Wright*, 1 *Caines*, 43.
*Coit* v. *Com. Ins. Co.* 7 *Johns. R.* 385.  In the last case it
was determined, that if the terms used in a policy of insurance
have, by the known *usage of trade or by use and practice,*
as between assurers and assured, acquired an appropriate sense,
they are to be construed according to that sense.  *Ashton* v.
*Union Ins. Co.* 7 *Cowen,* 202, *and Doug.* 512.

Upon the whole, the only question in the case is as to the
obligation of the defendants, independently of usage or cus-
tom, none having been proved.  That must depend upon the
naked fact of the deposit of the bill in the bank in the city of

New-York for collection in Philadelphia. It seems to me unreasonable to conclude from this, that the defendants assumed to become responsible for the fidelity of the agents, who all parties knew must intervene before collection could be effected. Transmission in due season, to a competent agent, is fairly implied; so much was personally within the power of the defendants, and which duty, it was known to the plaintiffs, the defendants must themselves perform; but beyond this the plaintiffs also knew others must be trusted. If proper care was taken in the selection of agents, the plaintiffs have lost nothing; they are in as good a condition as if the agents had been selected by themselves. Nothing more can reasonably be claimed, by mere implication from the defendants, especially when all that has been done by them is without compensation.

Judgment affirmed.