FRANCIS CHARLES LE MARCHANT et al., Composing the Firm of H. S. LEFEVRE & Co., Respondents and Appellants, v. JOHN G. MOORE et al., Composing the Firm of MOORE & SCHLEY, Appellants and Respondents.

1. SALE — PLEDGE — OWNERSHIP OF STOCKS BOUGHT BY STOCK-BROKER ON ACCOUNT OF A BANKER, FOR AN UNDISCLOSED CUSTOMER — TRANSFER OF TITLE FROM BANKER TO CUSTOMER — RIGHTS OF CUSTOMER IN STOCKS RETAINED BY BROKER AS SECURITY FOR BANKER'S ACCOUNT. If a customer orders his banker to buy certain shares of stock for him, and the banker, without disclosing the name of his customer, thereupon instructs a stockbroker, who is his correspondent and with whom he has an account, to buy the stock on his account, and the broker buys the stock accordingly, and the banker, instead of forwarding the money, allows the amount paid for the stock to be charged against him and the stock to remain with the broker as collateral security for any balance that may be owing on his general account, the banker becomes the owner, and the broker the pledgee in possession, of the stock; and if the banker then

27

notifies his customer that the stock has been bought, as ordered, the banker's title to the stock thereby passes to the customer, subject (where the customer has a balance to his credit with the banker sufficient to pay for the stock) only to the lien of the broker, and cannot thereafter pass by the banker's assignment in insolvency to his assignee.

2. MARSHALLING PLEDGED SECURITIES. In such a case, the banker's customer, on notifying the broker of his ownership of the stock, is entitled to have timely notice of any sale thereof, and to have other stocks or securities in the broker's hands belonging to the banker first sold and applied on the banker's indebtedness; and if any balance from the sale of the customer's stock is turned over by the broker to the assignee in insolvency of the banker, the customer may recover the amount thereof from the broker.

3. APPEAL — SUBMISSION OF CONTROVERSY — FACTS NOT IN SUBMISSION. On appeal from a judgment rendered upon the submission of a controversy, the Court of Appeals cannot assume the existence of facts not incorporated in the submission, for the purpose of reversing or adding to the judgment.

*Le Marchant* v. *Moore,* 79 Hun, 352, affirmed.

(Argued June 1, 1896; decided October 6, 1896.)

CROSS-APPEALS from judgment of the General Term of the Supreme Court in the first judicial department, entered June 20, 1894, upon a submission of a controversy under section 1279 of the Code of Civil Procedure, which awarded the plaintiffs the sum of $5,324.66, with interest.

The facts, so far as material, are stated in the opinion.

*Charles W. Pierson* for plaintiffs. Plaintiffs were general owners of the 100 shares of St. Paul, Minneapolis and Manitoba stock, or at least they had an equity in the stock and its proceeds superior to that of the assignees of Evans & Co. (*Markham* v. *Jaudon,* 41 N. Y. 241; *Skiff* v. *Stoddard,* 63 Conn. 198, 224; *Willard* v. *White,* 56 Hun, 581; *Hazard* v. *Fiske,* 83 N. Y. 287; *C. Nat. Bank* v. *Armstrong,* 148 U. S. 50; *Smith* v. *Savin,* 141 N. Y. 315.) Plaintiffs, upon discovering their stock in defendants' possession, were entitled to recover the stock or its proceeds, except so much as was required, after exhausting the other collaterals, to make good the account for which it was pledged, and defendants turned over the surplus to the assignees of Evans & Co. at their peril. (*Roca* v. *Byrne,* 145

N. Y. 182 ; Story on Agency, §§ 229–231 ; *Smith* v. *Savin,* 141 N. Y. 315 ; *Hazard* v. *Fiske,* 83 N. Y. 287 ; *Wright* v. *Cabot,* 15 J. & S. 229 ; 89 N. Y. 570 ; *Willard* v. *White,* 56 Hun, 581 ; *Van Alen* v. *A. Nat. Bank,* 52 N. Y. 1 ; *Naser* v. *F. Nat. Bank,* 116 N. Y. 499 ; *I. & T. N. Bank* v. *Peters,* 123 N. Y. 272 ; *F. Nat. Bank* v. *R. C. Bank,* 3 Fed. Rep. 257 ; *F. Nat. Bank* v. *F. Nat. Bank,* 76 Ind. 561.) Plaintiffs are entitled to recover $1,100, the value of the Boston Air Line stock, with interest, in addition to the amount awarded them by the General Term. (*Smith* v. *Savin,* 141 N. Y. 325 ; *Hazard* v. *Fiske,* 83 N. Y. 287 ; *Farwell* v. *I. & T. N. Bank,* 90 N. Y. 483 ; *Willard* v. *White,* 56 Hun, 581.) If the facts set forth in the submission would support an action of any kind, or upon any theory, against these defendants, plaintiffs are entitled to recover in this proceeding. (*Smith* v. *Savin,* 141 N. Y. 315 ; *Taft* v. *Chapman,* 50 N. Y. 449 ; *Baker* v. *Drake,* 66 N. Y. 518 ; *Gillett* v. *Whiting,* 120 N. Y. 402 ; *Wright* v. *Cabot,* 15 J. & S. 229 ; 89 N. Y. 570 ; *Stearns* v. *Marsh,* 4 Den. 232 ; *Hazard* v. *Fiske,* 83 N. Y. 287.) It is not essential to a recovery, in any view of the case, for plaintiffs to show a tender to defendants of the amount of their charges against plaintiffs' stock. (*Cortelyou* v. *Lansing,* 2 Caines, 200 ; *Stearns* v. *Marsh,* 4 Den. 231 ; *Allen* v. *Dykers,* 3 Hill, 593 ; 7 Hill, 497 ; *Wilson* v. *Little,* 2 N. Y. 443, 449 ; *Lewis* v. *Graham,* 4 Abb. Pr. 106, 115 ; *Kilpatrick* v. *Dean,* 15 Daly, 182, 190 ; *N. Y., L. E. & W. R. R. Co.* v. *Davies,* 38 Hun, 477 ; *Powers* v. *Benedict,* 88 N. Y. 605, 610 ; *Moller* v. *Tuska,* 87 N. Y. 166, 170 ; *Kinney* v. *Kiernan,* 49 N. Y. 164, 168 ; *Comstock* v. *Hier,* 73 N. Y. 269.)

*George Hoadly* for defendants. There was no privity of contract nor any contractual relation whatever between the parties. Therefore, the plaintiffs had no interest, legal or equitable, in the purchase. (*Allen* v. *Merchants' Bank,* 22 Wend. 215 ; *Montgomery Co. Bank* v. *A. C. Bank,* 7 N. Y. 459 ; *Comcl. Bank* v. *Union Bank,* 11 N. Y. 203 ; *Clark* v.

*Merchants' Bank*, 2 N. Y. 380; *M. Nat. Bank* v. *Loyd*, 90 N. Y. 530; *Cragie* v. *Hadley*, 99 N. Y. 133; *Nat. P. Bank* v. *Seaboard Bank*, 114 N. Y. 34; *Nat. B. & D. Bank* v. *Hubbell*, 117 N. Y. 395; *C. E. Bank* v. *F. Nat. Bank*, 118 N. Y. 443; *Allen* v. *McConihe*, 124 N. Y. 342; *St. Nicholas Bank* v. *S. Nat. Bank*, 128 N. Y. 26; *Wheatland* v. *Pryor*, 133 N. Y. 97; *Castle* v. *C. E. Bank*, 148 N. Y. 122.) The legal and equitable relations of the parties to each other were established at the date of the assignment. (*Markham* v. *Jaudon*, 41 N. Y. 236; *Baker* v. *Drake*, 66 N. Y. 518; *Gillett* v. *Whiting*, 120 N. Y. 402; *Willard* v. *White*, 56 Hun, 581; *Sillcocks* v. *Gallaudet*, 66 Hun, 522.) The Supreme Court erred in holding that the balance paid by Moore & Schley to the assignees was improperly diverted from the plaintiffs. (*Dey* v. *Durham*, 2 Johns. Ch. 189; *Gates* v. *Lebeaume*, 19 Mo. 17; *Hollister* v. *Loud*, 2 Mich. 309; *McFerran* v. *Davis*, 70 Ga. 661; *Bank of U. S.* v. *Huth*, 4 B. Mon. 429; *Exchange Bank* v. *Knox*, 19 Gratt. 739; *Wilty* v. *Franklin*, 1 Binn. 502; *United States* v. *Bank of U. S.*, 8 Rob. [La.] 262, 405; *Hall* v. *Dennison*, 17 Vt. 310; *Lawrence* v. *Davis*, 3 McL. 177; *Haven* v. *Richardson*, 5 N. H. 113; *Thomas* v. *Clark*, 65 Me. 296; *Meeker* v. *Sanders*, 6 Iowa, 61.) Moore & Schley in recognizing the title of the assignees of Evans & Co., and paying over to them the surplus money left from the sale of the securities over and above the debt to themselves did no more than their duty. (2 Herman on Estoppel, §§ 891, 893, 894; *W. T. Co.* v. *Barber*, 56 N. Y. 544; *Roberts* v. *S. S. Deposit Co.*, 123 N. Y. 57.)

Haight, J. The plaintiffs were co-partners, doing business in London, England, under the firm name of H. S. Lefevre & Company. Irving A. Evans & Company were bankers and brokers, doing business in Boston, Massachusetts. The defendants, Moore & Schley, were engaged in the business of bankers and stockbrokers in the city of New York. Evans & Company and Moore & Schley were correspondents of each

other, and purchased stocks for each other, both on their own account and that of their customers.

On the 25th day of September, 1891, the plaintiffs cabled Evans & Company to buy for them two hundred shares of the capital stock of the St. Paul, Minneapolis & Manitoba Railway Company, at 109. The plaintiffs had an account with Evans & Company, with an amount to their credit more than sufficient to pay for the stock. Evans & Company thereupon ordered the defendants to buy the stock, and they made the purchase on the 28th day of September, at the price named, notified Evans & Company of the purchase, and charged the same upon their books to the account of Evans & Company. In making the order for the purchase, the names of the plaintiffs were not disclosed to the defendants. At that time Evans & Company had an account with the defendants, with an amount to their credit, but not sufficient to pay for the stock in full, and the defendants retained the stock as collateral security for the balance then due on their general account. Evans & Company, after receiving notice from the defendants of the purchase of the stock, on the same day cabled the plaintiffs that they had purchased the stock at the price named, and thereupon the plaintiffs cabled Evans & Company to mail the stock to them as soon as registered in ten share certificates.

On the first day of October Evans & Company cabled the plaintiffs that the transfer books of the company would not be opened until the twelfth proximo, and asked if they should " transfer then," to which the plaintiffs replied " yes."

On the 22d of October Evans & Company wired the defendants to deliver to the Bank of British North America one hundred shares of the stock, to be held for H. S. Lefevre & Company, of London, and the defendants, pursuant to such instructions, delivered one hundred shares of the stock to that bank to the credit of the plaintiffs, thus leaving in their hands undelivered one hundred shares of the stock.

On the 24th of October Evans & Company made a general assignment for the benefit of creditors.

At that time the plaintiffs were ignorant of the fact that

one hundred shares of the stock were in the hands of the defendants, and the defendants were unaware of the claim of the plaintiffs to the stock.

On the 27th the plaintiffs ascertained the facts and caused their representative to call upon the defendants, who stated that the plaintiffs were the owners of the one hundred shares of stock in question, and inquired whether the defendants would deliver the stock to them, and requested information with regard to any charges or claims which the defendants might have against the stock, and requested that in any sale of collaterals which the defendants might make for account of Evans & Company that they should not sell the stock in question until the last of the stock held by them as collateral, and that they should give the plaintiffs notice of the time and place of such sale and should account to them for the proceeds thereof. The defendants declined to deliver the stock to the plaintiffs and declined to impart any information or make any statement upon the subject. Thereupon the plaintiffs caused a notice in writing to be served upon the defendants, of which the following is a copy :

"N<small>EW</small> Y<small>ORK</small>, *October 28th,* 1891.

" Messrs. M<small>OORE</small> & S<small>CHLEY</small>,

"New York City :

" G<small>ENTLEMEN</small> : — We hereby notify you that we claim, as agents of our clients, Messrs. H. S. Lefevre & Company, one hundred shares of St. Paul, Minneapolis & Manitoba Railway stock,   *   *   *   held by you subject to instructions from I. A. Evans & Company.

"Yours respectfully,

"KIDDER, PEABODY & CO.,

"By B<small>ARING</small>, M<small>AGOUN</small> & Co.,

" *Attys., Agents for H. S. Lefevre & Co.*"

The defendants made no response to the notice, and have never recognized the plaintiffs' claim to the stock, but, without notice to the plaintiffs, proceeded, under instructions from the assignee of Evans & Company, to sell the securities held

by them and apply the proceeds in settlement of the indebtedness of Evans & Company to them. The stock in question was sold last, and, after canceling the remaining indebtedness of Evans & Company, produced a balance of $5,324.66, which balance, together with twenty-five shares of Ensley Land and eleven hundred shares of Boston Air Line stock, of the value of eleven hundred dollars, they turned over to the assignee of Evans & Company.

On the first day of June, 1892, the plaintiffs, with full knowledge of all the facts, filed proofs of their claim against the insolvent firm of Evans & Company, in the Court of Insolvency of Massachusetts, except as to the aforesaid sum of $5,324.66.

The pivotal question upon which the rights of the parties depend is that of the ownership of the stock in question. The transaction in its essential features is not different from numerous others of daily occurrence. The chief market for corporate stocks is in the city of New York. It is the common practice of persons desiring to purchase or deal in stocks in other parts of the country to go to their banker and make their order, who makes the purchase or sale, as the case may be, through his correspondent in that city. That is what was done in this case. Lefevre & Company ordered Evans & Company, their bankers in Boston, to purchase the stock in question. Evans & Company might have refused compliance with the order. Had they done so that would have been an end of the transaction, but as soon as they complied with the order, made the purchase and notified the plaintiffs of such purchase, the transaction was then completed so far as the title to the stock was concerned. The plaintiffs could not thereafter repudiate the purchase or refuse to accept the stock. Neither could Evans & Company disaffirm and retain the stock as their own. The rights of the parties, so far as the title was concerned, then became fixed, independent of the question of payment. If the stock had not been paid for, Evans & Company, doubtless, would be entitled to hold it as pledgee until payment was made; but, inasmuch as the plaintiffs had

to their credit with Evans & Company more than sufficient to pay for the stock, the law would apply the amount thereof as an offset to any claim for payment that Evans & Company could make as against the plaintiffs.

It is contended, however, that no title to the stock passed to the plaintiffs, for the reason that Evans & Company did not purchase and take into their possession the stock. What they did do was to order the defendants, their correspondents in New York, to purchase the stock on their account. This was done, and the amount paid therefor was charged to Evans & Company, and the defendants so reported to Evans & Company. Evans & Company did not forward the money to the defendants to pay for the stock, but allowed the amount thereof to be charged against them and the stock to remain in the hands of the defendants as collateral security for any balance that might be owing on their general account. This was their customary course of dealing. Evans & Company then became the owners ; the defendants the pledgees in possession.

After this had occurred, Evans & Company cabled the plaintiffs that they had purchased the stock in compliance with their order, thus transferring to the plaintiffs their title to the stock. The wrong to the plaintiffs, perpetrated by Evans & Company, was in leaving the stock in the hands of the defendants pledged for the payment of their indebtedness. But this fact does not operate to prevent the title vested in Evans & Company from passing to the plaintiffs. They became vested with the title, subject only to the lien of the defendants. The title being in the plaintiffs, it did not and could not pass to the assignee under the assignment of Evans & Company.

The learned counsel for the defendants has, in an able argument, questioned the plaintiffs' title to the stock upon the ground that there was no privity of contract or contractual relation between the plaintiffs and the defendants ; that the defendants were the agents of the plaintiffs' agents, and were only bound to account to their principal in the transaction.

Our attention has been called to the case of *Allen* v. *Merchants' Bank* (22 Wend. 215), reversing the case reported in 15 Wend. 482, and following it a long line of authorities holding in substance that a bank receiving for collection a bill of exchange drawn upon a person residing at another place, is liable for any neglect occurring in its collection, whether arising from the default, misconduct or insolvency of its officers, its correspondents, or of the agents employed by such correspondents to make the collection.

These cases, however, all have reference to negotiable paper transmitted for collection, and to our minds have no application to the question involved in the case under consideration.

These cases have been considered by BRADLEY, J., in *Naser* v. *First National Bank* (116 N. Y. 492–499), in which he concludes :

" But it does not follow that the correspondent of the collecting agent, unless he has made advances to the latter in good faith upon the paper, can, as against the owner, retain the proceeds of it. The latter may revoke the agency he has conferred, and seek the paper or its proceeds in the hands of such correspondent, or he may follow it and reach them until it or they have found their way into the hands of a *bona fide* holder, for value, who has taken it from the party clothed with the apparent title. This is an equitable right, not necessarily resting in privity of contract with the party from whom such relief is sought. The occasion for it usually arises from the insolvency of its collecting agent, or some other cause rendering such remedy desirable for his protection."

The plaintiffs are not seeking to establish their right to the stock through the sub-agency of the defendants, or because of any privity or contractual relation existing between them. Their claim is prosecuted upon the theory that the defendants had purchased the stock for Evans & Company; that Evans & Company had become the owners thereof, subject to the defendants' lien as pledgee, and that Evans & Company had thereafter transferred their title to the stock to the plaintiffs,

28

who are now seeking to follow the property and recover it, or the proceeds thereof.

In *Roca* v. *Byrne* (145 N. Y. 182–186), Gray, J., says: "The general and well-recognized rule is, and has been, that a principal is entitled, in all cases, when he can trace his property, whether it be in the hands of the agent, or of his representatives, or of third persons, to reclaim it and it is immaterial that it may have been converted into money; so only that it is in condition to be distinguished from the other property or assets of the agent." (See, also, *Markham* v. *Jaudon*, 41 N. Y. 235–239; *Willard* v. *White*, 56 Hun, 581; *Van Alen* v. *Am. Nat. Bank*, 52 N. Y. 1; *Importers'*, etc., *Bank* v. *Peters*, 123 N. Y. 272; *Skiff* v. *Stoddard*, 63 Conn. 198.)

Treating the plaintiffs as the owners, with the stock in the possession of the defendants as pledgees of Evans & Company for the payment of their indebtedness to the defendants, the plaintiffs had the right to demand, and a court of equity would require the defendants to first satisfy their claim out of the other securities in their hands belonging to Evans & Company before resorting to the property of the plaintiffs. The defendants, as pledgees, were entitled to regard Evans & Company as the owners until they were notified of the plaintiffs' rights. Thereafter they were bound to recognize the plaintiffs' claim, and deal with the stock accordingly. The plaintiffs, as owners, had the right to have timely notice of any sale of their stock and to have the other stocks or securities in the hands of the defendants belonging to the pledgor first applied. (*Smith* v. *Savin*, 141 N. Y. 315; *Hazard* v. *Fiske*, 83 N. Y. 287.)

Ordinarily the plaintiffs would be entitled to recover the value of the Boston Air Line stock, or to have had that stock sold and the proceeds applied upon the indebtedness of Evans & Company before the sale of the plaintiffs' stock. But, as we have seen, the plaintiffs, with full knowledge of all the facts, have proved and filed their claim against the assigned estate for the full amount, less only the surplus derived upon the sale of the plaintiffs' stock.

It is stated in the submission of the controversy that this was done after the commencement of this action. The submission is dated the 14th of March, 1894. The proof of the claim is dated June first, 1892.

We are unable to understand how a claim could be proved after the submission of a controversy, and still the facts of such proof be incorporated in the submission. It is possible that an action had been previously brought, but we find no mention of it in the facts agreed upon. We cannot assume the existence of facts not incorporated in the submission for the purpose of reversing or adding to a judgment, neither can we determine whether or not the plaintiffs have received a dividend through the assignee upon their claim.

We are, therefore, of the opinion that the plaintiffs have waived their right to recover the value of the Boston Air Line stock.

The judgment should be affirmed, without costs to either party.

All concur.

Judgment affirmed.