ALBERT C. WILLS, Appellant, *v.* INVESTORS BANKSTOCKS CORPORATION, Respondent. (Actions Nos. 1 and 2.)

First Department, May 1, 1931.

Howard C. Kelly, for the appellant.

Jerome G. Rosenhaus of counsel [Kopp, Markewich & Null, attorneys], for the respondent.

O'MALLEY, J. The plaintiff brings two actions, both in conversion. One is for defendant's alleged unlawful detention of twenty shares of Ætna Life Insurance Company stock, valued at $2,050; the other for like detention of ten shares of Equitable Trust Company stock of the value of $1,445.

Judgments in the City Court in plaintiff's favor have been reversed by the Appellate Term upon the theory that plaintiff failed to show title, or right to immediate possession to the stock, in himself.

J. S. Schofield & Co., hereinafter referred to as Schofield & Co., dealers in investment securities, were engaged in business in Waterbury, Conn., and held themselves out as specialists in bank and insurance stocks. The defendant was and is a concern doing business in New York city as a dealer in stocks. Between the respective home offices of these two companies was maintained a teletype, or a telegraphic wire device.

On November 19, 1929, plaintiff, a resident of Waterbury, Conn., bought from Schofield & Co. twenty shares of Ætna Life Insurance Company stock at 101½ and paid in cash therefor a net sum of $2,030. On the same day Schofield & Co. purchased from the defendant a like number of shares of the same stock at 99, for a total price of $1,980, paying the defendant therefor by draft. This transaction was arranged by teletype and confirmed in writing. In a series of teletype communications, Schofield & Co. asked that the name of the plaintiff be put on the shares purchased, and on the same day wrote the defendant confirming the sale of the twenty shares of Ætna Life Insurance Company stock "transferred to the name of Albert C. Wills," and expressed a desire that the stock be forwarded "as soon as transferred so we can make delivery to *our client*."

The following day the defendant asked for and received by teletype plaintiff's name and address. Upon receipt of Schofield & Co.'s letter of November nineteenth, just referred to, and the draft in payment of the purchase price, the defendant wrote Schofield & Co. on November 20, 1929, stating that they had on that day placed

the twenty shares " into transfer in the name of Albert C. Wills, 95 Bank Street, Waterbury, Connecticut, in accordance with your instructions."

The defendant actually purchased the required number of shares and obtained physical possession of the certificate therefor. This certificate, however, was in the name of one Lyon, and not the plaintiff, and was in the defendant's possession when plaintiff made a demand for it on April 16, 1930, the date of the alleged conversion. Lyon was the defendant's nominee.

The apparent ground for defendant's refusal to turn the certificate over to the plaintiff, although it had received payment in full for the transaction, was the fact that, following an involuntary petition in bankruptcy, Schofield & Co. had been adjudicated bankrupt on November 23, 1929. At this time Schofield & Co. was indebted to the defendant on a *general account* in a sum in excess of the value of these particular shares of stock. It is conceded, however, that the money due and owing by Schofield & Co. to the defendant in no way represented any advances on the stock here involved.

A like series of transactions took place between plaintiff, Schofield & Co. and the defendant with respect to the stock of the Equitable Trust Company on November 20 and 21, 1929, the alleged conversion of which is made the basis of the first cause of action.

The defendant maintains that under the circumstances here presented, Schofield & Co. was not acting as a stockbroker with respect to the plaintiff, but was transacting the business as a stock dealer or jobber.

We are of opinion that, so far as this defendant is concerned, Schofield & Co. was the agent of the plaintiff as a disclosed principal in the transactions. At the very outset this defendant was notified that the purchase was for the plaintiff; that the stock was to be transferred to his name, the defendant itself requesting his address, and receiving payment in full. The mere fact that Schofield & Co. took a profit rather than a commission on the transaction should make no difference. This defendant had been paid in full.

With respect to plaintiff it had no lien or claim on the stock. It would be manifestly most unjust to permit it to defeat plaintiff through a counterclaim arising out of a general account against Schofield & Co. which in no wise was connected with the subject-matter of the transactions here involved.

The actions fall within the principle of *Le Marchant* v. *Moore* (150 N. Y. 209). Under the reasoning of that case the defendant here would have been entitled to regard Schofield & Co. as owner of the stock, had it not been notified of the plaintiff's rights in the premises. Having notice of such rights, it was bound to recognize

plaintiff's claim and deal with the stock accordingly. (*Le Marchant* v. *Moore, supra,* 218.)

It follows that the determination of the Appellate Term should be reversed, with costs in this court and in the Appellate Term, and the judgments of the City Court affirmed.

FINCH, P. J., SHERMAN and TOWNLEY, JJ., concur; MERRELL, J., dissents.

MERRELL, J. (dissenting). In the first action plaintiff sues for conversion of shares of the capital stock of the Equitable Trust Company of the value of $1,445, and in the second action of the Ætna Life Insurance Company of the value of $2,050. The answer of defendant in each case is a general denial. Defendant is a dealer in so-called " over-the-counter " securities, making a specialty of bank stocks. On November 19, 1929, plaintiff purchased from J. S. Schofield & Co. of Waterbury, Conn., twenty shares of Ætna Life Insurance Company stock at $101.50, or a total price of $2,030, On the day following plaintiff purchased of Schofield & Co. ten shares of Equitable Trust Company stock at $95 a share, or a total price of $950. Plaintiff paid for these purchases to Schofield & Co. To fulfill its commitment to plaintiff, Schofield & Co., in turn, on November 19, 1929, purchased from defendant twenty shares of Ætna Life Insurance Company stock at $99 a share for a total price of $1,980, and on November 20, 1929, purchased from defendant ten shares of Equitable Trust Company stock at $92 a share, for a total purchase price of $920. These purchases by Schofield & Co. from defendant were preceded by a " teletype," a telegraphic wire device in common use between New York city brokers communicating with their out-of-town correspondents. Schofield & Co. paid to defendant the agreed purchase price. It is the contention of plaintiff that Schofield & Co. in these transactions acted as his agent or stockbroker. The defendant contends that Schofield & Co. was in no sense the agent of plaintiff, but was a stock dealer or jobber in the purchase and sale of the securities in question. This narrow difference presents the point involved upon this appeal. As showing the actual relationship between Schofield & Co. and plaintiff, the record shows that the letterhead of Schofield & Co. states said concern to be a specialist in " investment securities." The written confirmation of the sale from Schofield & Co. to plaintiff read: " We are pleased to confirm sale to you." It is the contention of respondent that such confirmation of sale clearly indicates that Schofield & Co. were acting, not as stockbrokers or agents of plaintiff, but in the capacity of stock dealers or jobbers in the securities in question. Respondent urges that had their relation-

ship to plaintiff been that of agents or stockbrokers, the letter of confirmation would have read: " We have this day sold (or purchased) for your account and risk." There is no claim made by plaintiff that Schofield & Co. were to receive or were paid any commission for their services. Their compensation was derived from the fact that they purchased the ten shares of Equitable Trust Company stock at ninety-two dollars per share and then sold it at a rise of three dollars per share, selling it to plaintiff at ninety-five dollars per share. As to the twenty shares of Ætna Life Insurance Company stock, Schofield & Co. bought them from defendant at ninety-nine dollars per share and sold the same twenty shares to plaintiff at one hundred and one dollars and fifty cents per share, or a profit of two dollars and fifty cents per share. On November 19, 1929, Schofield & Co. wrote requesting defendant to have twenty shares of the Ætna Life Insurance Company stock transferred to the name of plaintiff. Defendant replied by letter dated November 20, 1929, stating it had that day placed twenty shares of the Ætna Life Insurance Company stock in transfer as requested. A similar request of Schofield & Co. and a similar reply by defendant was made as to the ten shares of Equitable Trust Company stock. On November 23, 1929, an involuntary petition in bankruptcy was filed against Schofield & Co. in the United States District Court of Connecticut, and said company was adjudicated a bankrupt. It is conceded that at the time of the filing of the petition in bankruptcy against Schofield & Co. and at the time of the purchase of the respective securities, Schofield & Co. was indebted to defendant in a sum approximating $5,000 and in amount greater than the money representing the total purchase price of the two blocks of securities. The cashier and secretary of defendant testified at the trial that the securities in question were at no time actually transferred to the name of plaintiff, but that the same remained in the name of defendant's nominee, one John J. Lyon. Such testimony stood uncontradicted in the record. On cross-examination defendant's cashier and secretary was questioned about the contents of defendant's letters wherein it was stated that the involved securities had been placed in transfer for the purpose of transferring them in plaintiff's name, and he testified that the letters in question should not have been written. He testified that at the time the letters were written the defendant did not have the physical possession of either the Ætna Life Insurance Company stock or Equitable Trust Company stock; that the person from whom it had purchased the Ætna Life Insurance Company stock, in order to make delivery to Schofield & Co., had to send his certificate of stock to the Hartford office of the Ætna Life Insurance Company for " split up " in order to obtain a

twenty-share certificate. The twenty shares of Ætna Life Insurance Company stock were not received by defendant until December, 1929, long after Schofield & Co. were declared bankrupt, and the Equitable Trust Company stock could not be delivered until December 2, 1929, because such stock was a "when issued" stock, and the bank did not start issuing said stock until after December 2, 1929. Under such circumstances, plaintiff contended that defendant was liable in conversion. Defendant, however, refused to deliver the securities to plaintiff, claiming it had a right to set off the same as against the indebtedness of Schofield & Co. to it.

Unless plaintiff obtained title to the stock in question, conversion would not lie. I think the evidence indicates very clearly that Schofield & Co., in the transaction, were not acting as stockbrokers or agents of plaintiff, but that they were purely and simply dealers or jobbers in the stocks in question, and that, therefore, the law upon which the plaintiff relies, applicable to the relation of stockbroker and customer, cannot have any application. In order to establish conversion by defendant of plaintiff's property, it is necessary for plaintiff to show that defendant exercised some dominion over the property to which plaintiff either had title or the right to immediate possession. Plaintiff's alleged right of possession of the securities depends entirely upon ownership or title therein. Plaintiff cannot claim actual possession of the securities, nor can plaintiff claim an actionable possessory right thereto independent of title, such as might be claimed by a bailee or pledgee. It is alleged in the complaints in both actions that plaintiff is the owner of the securities. Plaintiff had no direct dealings with defendant. There was no contractual privity between plaintiff and defendant, and plaintiff, therefore, contends that Schofield & Co. acted as his broker in its dealings with defendant. If such relationship existed, then privity between plaintiff and defendant would be shown. But it seems to me that Schofield & Co. are shown to have acted, not as stockbrokers or agents for plaintiff, but as dealers in the securities in question. Ordinarily stockbrokers are agents working for a commission. They attend to the purchase and sale of stocks or shares or other securities for and on behalf of clients. They are employed to buy and sell shares of stocks of incorporated companies by their principals. It cannot be said that a person who buys for himself and sells to another is acting as a stockbroker for that other. Stockbrokers, on the other hand, do not transact business for themselves, but for others. Their employment is to buy or sell stocks, and they receive compensation for their services. They act as agents of the persons for whom the purchases or sales are made.

Their interest in the transaction is only to the extent of the commission which they are to receive. On the other hand, stock dealers or jobbers are those who deal in stocks or shares. They are persons who purchase or sell stocks, bonds or other securities on their own account. The distinction between a stockbroker and a stock dealer is clear and well defined. Having in mind the distinctive features between stockbrokers and stock dealers or jobbers, the record on this appeal shows that Schofield & Co. were actually acting as dealers and not as brokers in relation to the two transactions. In the first place, Schofield & Co.'s letterhead represented them to be specialists in " investment securities." Secondly, the written confirmation of sale from Schofield & Co. to plaintiff read: " We are pleased to confirm sale to you." It did not read: " We have this day sold or purchased for your account and risk," which would have been the natural wording of the confirmation had Schofield & Co. been acting as the brokers for plaintiff. Furthermore, the evidence shows that Schofield & Co. bought the ten shares of the Equitable Trust Company stock from defendant at ninety-two dollars per share, and on the same day sold the same stock to plaintiff at ninety-five dollars per share; and that Schofield & Co. purchased of defendant twenty shares of the Ætna Life stock at ninety-nine dollars a share, and the same day sold the same stock to plaintiff at one hundred and one dollars and fifty cents a share. Nothing, it seems to me, could more clearly indicate the capacity in which Schofield & Co. were acting, and that they were at the time, not the agents of plaintiff, but were dealers in the securities which they sold to him. There is no claim on the part of plaintiff that Schofield & Co. were to receive any commissions whatever. Their compensation was in the increased price which they received from plaintiff for the two blocks of stock in question. The form of confirmation used by Schofield & Co., showing a profit to it of three points on one stock and two and one-half points on the other, shows the true relationship between said company and plaintiff. It, therefore, seems to me that the authorities cited by appellant have no application to the situation presented and are applicable only to a condition where the relation of principal and agent exists. There can be no question that at the time of these transactions, Schofield & Co. owed defendant approximately $5,000. Upon the insolvency of Schofield & Co. the defendant had the legal right to set off as against said bankrupt the amount of its existing indebtedness against the bankrupt. Most surely, if the receiver or trustee in bankruptcy of Schofield & Co. had attempted to collect of defendant the value of the stocks in question defendant could have set off its indebtedness by way of counterclaim in such suit. Had

plaintiff in these actions brought suit against defendant as assignee of Schofield & Co., defendant would be permitted to set off its indebtedness by way of counterclaim. Plaintiff, however, does not sue on any assigned claim, but brings suit on the theory that he is the owner of the stocks in question, and that defendant has converted same. It seems to me that the loss in this matter must fall upon plaintiff, with whom defendant had no dealings whatever, and that defendant cannot be held chargeable.

Under such circumstances the learned justice of the City Court, before whom the actions were tried, erroneously held that the defendant had converted the stocks in question to plaintiff's damage. The Appellate Term, in reversing the City Court, held that the evidence established that no stock was ever appropriated to defendant's contract with Schofield & Co., and that no title to any stock passed to either Schofield & Co. or plaintiff, and that, therefore, there was no conversion, and that the judgments appealed from must be reversed, with costs, and judgment directed in each case for defendant.

The determination of the Appellate Term should be affirmed, with costs to respondent against appellant.

Determination reversed, with costs and disbursements in this court and in the Appellate Term, and judgments of the City Court affirmed.