Fkoessel, J. (dissenting).
We have repeatedly held that the granting of a motion for summary judgment where there was at least “ doubt as to the existence of a triable issue ” was clearly unwarranted (Falk v. Goodman, 7 N Y 2d 87,91; Sillman v. *499 Twentieth Century-Fox Film Corp., 3 N Y 2d 395, 404; Di Menna & Sons v. City of New York, 301 N. Y. 118, 121); that since the granting of such a motion is the ‘ ‘ precedural equivalent of a trial ” (Falk v. Goodman, supra), it should he denied whenever the issue “ is fairly debatable ” (Stone v. Goodson, 8 N Y 2d 8,12) or is “ ‘ arguable ’ (Barrett v. Jacobs, 255 N. Y. 520, 522); 1 issue-finding, rather than issue-determination, is the key to the procedure ’ ’ ’ (Sillman v. Twentieth Century-Fox Film Corp., supra). If these rules mean anything, the granting of plaintiff’s motion for summary judgment herein was patently erroneous.
This is a tort case — for conversion — in which defendants are subject to arrest and imprisonment (Civ. Prac. Act, § 826, subd. 3) and they have been adjudged liable on clearly conflicting affidavits.
Plaintiff instituted this action on September 30, 1960, following refusal by defendants, a New York stock brokerage firm, to release to her the credit balance and securities in a stock brokerage account maintained by them under the name ‘[1] Mendoza y de la Torre Spl A/c #35 R C ” and opened a few months before Castro came into power in Cuba. The complaint alleged that plaintiff was the owner of the credit balance and securities in the aforesaid account; that she, through her agent Mendoza, a Cuban broker, had delivered the property to defendants to be held for her account upon the agreement of defendants that the property would be returned to plaintiff upon demand; that such demand was made but defendants wrongfully refused to return the property and converted it to their own use.
Defendants’ answer denied the material allegations of the complaint, with the exception of the demand and refusal. It set forth by way of defense that the property in question was part of an omnibus account maintained by them for Mendoza pursuant to an agreement made in 1950 in compliance with the provisions of section 4 (subd. [b]) of Regulation T issued by the Board of Governors of the Federal Reserve System (Code of Fed. Reg., tit. 12, § 220.4, subd. [b]), which expressly recognizes “ Special omnibus account[s] ”; and that said property was duly credited against the debt balance existing in said account from Mendoza to defendants.
*500 After executing plaintiff’s orders through his omnibus account with defendants, Mendoza delivered to plaintiff a letter dated June 6, 1958, expressly reciting that ‘1 the account that appears on the books of Messrs. Jacques Coe & Co., 39 Broadway, New York 6, N. Y. as Mendoza y de la Torre, ‘ Special Account Number 35 R.C.’, with its balances in securities and funds in favor or against, is the exclusive property of Mrs. Reina Canto de Gomez Mena, who can give orders to us or to Messrs. Jacques Coe & Co.” Plaintiff alleged that Mendoza informed her that “he had notified defendants that said special account is my exclusive property and that he had sent them a copy of said letter ”.
Defendants emphatically maintain that they “at no time received a copy of such letter from Mendoza ’ ’; indeed they alleged they first saw this letter in September, 1960 when plaintiff produced it in connection with her demand. Thus the unilateral act of Mendoza in so informing plaintiff can in nowise affect defendants’ rights; on this motion, therefore, in view of this conflict we may attach no significance to this letter. Defendants further assert they “ had no agreement or understanding with Mendoza to carry any account for plaintiff nor to receive or carry any moneys or securities for her ’ ’. They allege that their sole agreement was with Mendoza, and that he alone was their customer pursuant to their 1950 omnibus account agreement.[1] Of course they knew that the securities in the omnibus account belonged to customers of Mendoza, for such is the nature of an omnibus account; moreover, even if they knew the names of Mendoza’s customers, unless some restriction were imposed upon them they would be justified in treating Mendoza only as their customer.
On September 8, 1960 plaintiff made demand on defendants for the property in question. Defendants refused to comply with this demand, contending that Special Account #35 R C was but a sub-omnibus account included in the omnibus account *501 maintained for Mendoza, and that the latter account had a debit balance of approximately $74,283.97; the cash and securities in the sub-omnibus account had allegedly been pledged by Mendoza as security for the entire omnibus account. In support of this contention, defendants also rely upon a letter from Mendoza, dated February 29,1960, wherein it is stated:
“ all of the accounts which you [defendants] are carrying on your books for our Omnibus Account, including not only the Omnibus Account itself, but all of the other Sub-Omnibus Numbered Accounts, except if specifically advised otherwise, are to be regarded and treated by you as being one account. At' present these other accounts are: * * * [setting forth 14 accounts, 12 of which were ‘ Special ’, including] Mendoza y de la Torre Omnibus Special 35 B.C.
* * #
“ Furthermore, you have at all times the unrestricted power to sell any of the securities carried in any of these accounts in order to keep the entire Omnibus Account on a proper marginal basis.”
Plaintiff maintained, however, that defendants had no right to rely upon the above-quoted letter in the absence of her consent, since they allegedly knew the account was her property. As indicative of defendants’ knowledge, plaintiff points to the fact that she received statements with respect to the account from defendants, and that defendants paid to her the dividends and interest received on the securities in her account. Defendants denied these allegations, stating that their statements were all directed to Mendoza, and never to plaintiff, except on one occasion when Mendoza directed them to send a copy to plaintiff. Defendants further alleged that remittances to plaintiff were made only pursuant to the instructions of Mendoza. Thus the affidavits are conflicting throughout.
Mendoza’s notification to plaintiff that her orders had been executed and the stocks purchased on her behalf undoubtedly transferred title to the securities in question to plaintiff, no matter what the nature of Special Account #35 B C in which *502 they were held (Le Marchant v. Moore, 150 N. Y. 209, 216; People v. Atwater, 229 N. Y. 303, 312). If, therefore, the securities were wrongfully pledged with defendants as security for another account, Mendoza’s action was a criminal offense (Penal Law, § 956) as well as a civil conversion. Nevertheless, this does not establish, as a matter of law, that plaintiff is entitled, as against defendants, to the property contained in the pledged account. A broker who, as a pledgee for value and without knowledge of a third person’s interest, receives securities as collateral for the indebtedness of the person in whose name the account stands may apply such collateral against the debt balance .of that account (Willard v. White, 56 Hun 581 [1st Dept.]; Le Marchant v. Moore, supra; Kittredge v. Grannis, 244 N. Y. 168,177).
In the absence of knowledge to the contrary, defendants are “ entitled to the protection of the ordinary presumption that the person in whose name an account stands is the party in interest from whom instructions are to be taken ” (Timpson v. Allen, 149 N. Y. 513, 519-520). Or, phrased somewhat differently, Judge Andrews restated the presumption thus (Kittredge v. Grannis, 244 N. Y. 168, 177, supra):
1 ‘ Assuming, therefore, that there was a conversion . of these bonds by [plaintiff’s broker], or that in the sale there was a breach of faith amounting to fraud, the next question to be considered is exceptions touching the question as to whether [the defendant brokerage firm] became holders in good faith. As to them we start out with the presumption that the brokers having possession of these negotiable instruments had the right to sell them. They had presumably also the right-to pledge them for the amount due from the customer, and the pledgee taking them in due course might assume that the pledge was of right. In the absence of knowledge to the contrary or of facts which required inquiry [defendants] might rely upon these presumptions.”
That the pledge was unauthorized and constitued a conversion, or that the stock pledged was wholly paid for by the wrongdoer’s customer, does not alter the fact that title thereto was subject *503 to the lien of the innocent pledgee for value (Le Marchant v. Moore, supra; Willard v. White, supra). Indeed, in Turnbull v. Longacre Bank (249 N. Y. 159, 164-165), we recognized the negotiable character of stock certificates, and held that an innocent pledgee for value from a thief was entitled to retain the stolen securities subject to the true owner’s right to redeem the pledge by paying the debt for which the certificates were collateral security.
Applying these principles to the instant case, it is manifest that the crucial issue is whether defendants had knowledge that Mendoza was not privileged to pledge the securities in question. This question is not one that may be answered on the basis of the present record, since the parties’ affidavits are in direct conflict on each point which might tend to resolve the issue one way or the other. Credibility of affiants is for the trier of facts, and may not be determined by the court on a motion for summary judgment (Di Donna v. Sachs, 9 A D 2d 576; Bernstein v. Kritzer, 224 App. Div. 387, 389).
We have in this case no evidence of custom or usage, nor do we have the testimony of Mendoza, the Cuban broker, with whom plaintiff had other accounts. It should be noted that defendants’ answer was served on November 7, 1960. They promptly served a demand for a bill of particulars which was furnished on November 17, 1960. Just eight days later plaintiff moved for summary judgment. In the meantime, defendants were trying to contact Mendoza, but efforts to communicate with him in Cuba failed in the short interval between service of the bill and the motion for summary judgment. We are told he is now in this country, and that11 his testimony could clarify the issues presently obscure ’ ’.
For all of the foregoing reasons, the judgment appealed from should be reversed and the motion for summary judgment denied, with costs.
Judges Dye, Burke and Foster concur with Judge Fuld; Judge Froessel dissents in an opinion in which Chief Judge Desmond and Judge Van Voorhis concur.
Judgment affirmed.

. That agreement provided that defendants “are acting as broker for” Mendoza “ and not for any other person, and that ” Mendoza “ is liable to you for all commitments incurred and amounts due on transactions in said account ”.