NEWMAN, District Judge.
In this suit by the Chemical National Bank of St. Louis, Mo., against the City National Bank of Quanah, Tex., the plaintiff by its petition sought to recover against defendant on certain promissory notes executed by the defendant bank through its cashier, William F. Brice. There was also an account in the petition for money loaned, covering the same transaction as that embodied in the notes. The City National Bank defended on the ground that the action of Brice was not its action, and that it never made the loans or executed the notes, and that the transaction by Brice was for his personal benefit, and did not inure to the benefit of the bank in any way. The record discloses the fact, which is undisputed, that Brice was the cashier of the City National Bank, and that in 1894 he applied to the cashier of the Chemical Bank for accommodations, proposing to keep a balance in the Chemical Bank, and to send it the collections in St. Louis of the City National Bank. Brice also sent to the Chemical National Bank, to be used for comparison, what he represented to be, and what purported to be, the signatures of the officers of the City Bank; also what purported to be a resolution of the directors of the City Bank, authorizing him as cashier to borrow from time to time, and to rediscount with the Chemical Bank, the whole or any part of $10,000, and to deposit as collateral paper made by the customers of the City National Bank. The correspondence resulted in an agreement between the cashiers of the two banks, and on August 27, 1894, a note for $5,000 was sent by Brice to the Chemical Bank. This note was signed “City National Bank, by William F. Brice, Cashier,” with the seal of the bank affixed. Certain collateral, amounting to $7,640, consisting of what purported to be notes payable to the City Bank, was forwarded with this note. Subsequently a note similarly signed was made on September 27, 1894, for a like amount, with which collateral, or what purported to be collateral, amounting to over $8,000, was placed. The proceeds of these notes, when discounted by the Chemical Bank, were placed to the credit of the City Bank, but unquestionably a large proportion of the amount was used by Brice for his individual benefit. Soon after these transactions 3,000 silver dollars were sent by the Chemical Bank, on a telegram requesting the same, signed “City National Bank,” and this silver, according to the evidence, went into the vaults of the City Bank. There was considerable evidence in the case, but it need not be set out in detail, as the above statement embraces the material facts necessary to an understanding of the issues involved. The court directed a verdict, under all the evidence in the case, for the plaintiff, and the question presented is, was this action of the court right?
Not only did Brice, the cashier of the City Bank, have the usual powers of a cashier,—of general management of the bank’s business as to loans, rediscounts, etc.,—but the testimony of the president shows that the actual management of the City Bank was left almost entirely to Brice after April 2, 1894. Brice seems to. have been left by the president and directors of the bank, in connection with his son, as assistant cashier, in full control of the bank’s business. The letters written by Brice in reference to loans from the Chemical *861 Bank, and all the correspondence, were on the regular letter paper, and was what purported to be a copy of a resolution of the directors authorizing the loan. There was printed on all the paper so used •this heading:
The City National Bank. Capital $100,000.
G. S. White, President. J. W. Golston, Vice President.
Wm. P. Brice, Cashier. . E. H. Brice, Asst. Cashier.
Quanah, Texas.
While it appears to be true that the signature of the president, •though a good imitation of his genuine signature, was a forgery, and while what purported to be a resolution of the board of directors was also a forgery, there was nothing whatever to excite the suspicion of the officials of the Chemical Bank as to their genuineness. The action of Brice was within the general scope of his duties as •cashier of the bank, and there was nothing whatever in it calculated •even to arouse inquiry as to Brice’s honesty, and as to the transaction being made in good faith on behalf of the City Bank.
Any authority that may be found to the effect that rediscounting the bank’s paper does not come within the scope of the powers of the cashier of a bank would not be applicable to the facts here. There is evidence in this case to show that it was customary for similar banks in Texas, during certain seasons, to borrow money in this way. Considering the amount and character of these loans, .and the whole nature of the transaction with the Chemical Bank, there was nothing done, as it appeared to the Chemical Bank, that Brice could not legally and properly do. The cases of Western Nat. Bank v. Armstrong, 152 U. S. 346, 14 Sup. Ct. 572, and Chemical Nat. Bank v. Armstrong, 13 C. C. A. 47, 65 Fed. 573, are not applicable, on their facts, to this case. The character and amount of the loans, and the manner in which they were made in both of these ■cases, were such as might well have raised suspicion as to the regularity and bona fide character of the transaction. In this case the negotiations and all the correspondence were such as might well lead the officers of the Chemical Bank to believe that Brice was acting on full authority, with perfect good faith and honest intention. The transaction with the Chemical Bank being, as we have stated, within the general scope of the duties of a bank cashier, and Brice having been placed by the authorities of the City Bank in a position and •afforded facilities to enable him to make these loans as its representative, we do not see how the court could have done otherwise than direct a verdict, as it did, in favor of the plaintiff on these notes. A sentence or two from leading authorities will indicate, without multiplying citations, the law we think applicable to this case: “The cashier is the executive officer through whom the whole financial operations of the bank are conducted.” Merchants’ Bank v. State Bank, 10 Wall. 604. “The cashier has inherent power to borrow money in the regular course of the business of the bank, and may secure the loan by note or pledge of the bank’s property.” Morse, Banks, § 160. See, also, Mor. Priv. Corp. §§ 539, 597.
The first specification of error is that the court erred in admitting in evidence the notes executed by Brice as cashier of the City Bank *862 to the Chemical Bank, without proof of execution, notwithstanding the plea of non est factum. They were admitted on an admission by defendant that Brice, who signed them, was the cashier of the defendant bank, that the same were in his handwriting, and that the seal affixed was the genuine seal of the bank. There was no error in this.
The second specification of error is that the court erred in admitting in evidence what purported to be a copy of the resolution of the board of directors authorizing Brice to make these loans. There-seems to have been no question but that Brice placed this paper,, containing what purported to be the action of the board of directors, with the Chemical Bank, in connection with the loan transaction^ and we think the paper was properly admitted, its weight and value as evidence to be afterwards determined.
The third specification of error is that the court erred in refusing to instruct the jury to return a verdict for the defendant. In this-the court was clearly right.
The fourth assignment of error is that the court erred in instructing the jury to return a verdict for the plaintiff. We think, on the-whole case before the court, for the reasons we have heretofore given, that this instruction to return a verdict for the plaintiff was-right. •
The court having correctly directed a verdict for the plaintiff, the-judgment based thereon should be affirmed; and it is so ordered.