## DAVIS v. McNAIR. *
### No. 5938.

Circuit Court of Appeals, Fifth Circuit.
April 14, 1931.

George C. Bedell, of Jacksonville, Fla., and David R. Dunham, of St. Augustine, Fla., for appellant.

Frank D. Upchurch, of St. Augustine, Fla., for appellee.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This is an appeal from a decree sustaining a motion to dismiss a bill in equity, the allegations of which showed as follows: On July 8, 1929, the appellant, who is herein called plaintiff, had to his credit the sum of $35,062.74 on deposit in the savings department of the First National Bank of St. Augustine, Fla., which is herein referred to as the bank. On that day plaintiff went to the place of business of the bank and made known his desire to purchase Liberty bonds to the amount of $35,000, par value, in the denomination of $5,000 each, with money he so had in deposit, and plaintiff then ordered said bonds and offered to draw out his money to the amount then to his credit, and tendered his passbook. He was informed at that time by the bank's representative that it was not necessary for him to draw out his money, that the bank would purchase the bonds for him and charge the price of same to his account. Plaintiff then asked when he could get the bonds, and was told that it would take eight or ten days before the bonds could be delivered, and that he would be notified when the bonds arrived. For reasons unknown to plaintiff the bonds were not ordered immediately as he had requested, and were not ordered until the 18th day of July, 1929, on which day the cashier of the bank ordered said bonds by letter, on the office copy of which, retained by the bank, a notation was made showing that the order and purchase were for plaintiff. Said bonds were ordered in the amount and denomination above stated through the Chase National Bank of the city of New York, which made due acknowledgment to the bank of the order to purchase said bonds, which said acknowledgment was received by the bank on or about July 22, 1929.

On July 23, 1929, an officer of the bank called an officer of the bond department of

the Chase National Bank on long-distance telephone, and was advised that $35,000, par value, of Liberty bonds had been purchased and charged to the account of the bank. The bank by vote of its directors closed its doors for business on July 24, 1929; on or about July 25, 1929, the Comptroller of the Currency appointed T. J. Cottingham receiver of the bank, for the reason that said bank was insolvent and unable to pay its just and legal debts. Subsequently the Comptroller of the Currency, under and by virtue of the authority in him vested, appointed R. L. Van Zandt receiver of the bank to succeed T. J. Cottingham, and said R. L. Van Zandt was receiver of the bank at the time the bill of complaint was filed. After the bill was filed, as alleged by plaintiff by way of supplement thereto, the appellee, M. C. McNair, by authority of the Comptroller of the Currency, succeeded R. L. Van Zandt as receiver of the bank. He is herein referred to as the defendant.

Plaintiff made demand on T. J. Cottingham, as receiver of the bank, for delivery to plaintiff of said Liberty bonds purchased by the bank for him, and the demand was refused. Plaintiff has since made formal demand in writing on the receiver of the bank for delivery to him of said Liberty bonds, and such demand has been refused, and said Liberty bonds have never been turned over and delivered to plaintiff or any one for him. At the time plaintiff ordered the purchase of said Liberty bonds by the bank, he offered to have entered upon his passbook the charge of the money necessary to pay for said bonds, and thereafter plaintiff would not have been permitted by the bank to withdraw his money from the savings department of the bank had he desired to do so. The president of the bank stated to several persons that plaintiff had drawn out his money and purchased Liberty bonds. Plaintiff did not learn and did not know until after the bank had closed its doors for business, as above stated, that his account in the savings department of the bank had not been charged with the purchase of said bonds, if in fact his said account has not been so charged. Said bonds, purchased as above stated, are being held by the Chase National Bank as security for indebtedness of the bank to the said the Chase National Bank, but plaintiff is without information as to the amount of said indebtedness or as to how much, if any, of said indebtedness is on account of the purchase price of said bonds, or whether said Chase National Bank has a lawful lien upon said bonds. "The plaintiff is now informed that the actual purchase price of said Liberty Bonds including earned interest was less than a hundred dollars more than the amount which the plaintiff had on deposit at the time he ordered said Liberty Bonds; that the plaintiff was never advised or informed until after said The First National Bank of St. Augustine closed its doors that the purchase price of said Liberty Bonds was more than the amount of his deposit, and is now without information as to the precise amount of the purchase price of said bonds and the costs and charges attendant upon said purchase, but the plaintiff has always been ready, able and willing to pay over and above the amount he had on deposit in said The First National Bank of St. Augustine whatever might be reasonably due said Bank on account of the purchase price of said bonds and its proper charges in that behalf; and the plaintiff is now ready, able and willing to do equity and so offers."

The bill, to which the defendant, as receiver of the Bank, by substitution became the sole party defendant, contained prayers that the court decree the right of appellee as such receiver in said bonds to be subject to a trust in favor of plaintiff, and that in the liquidation of the indebtedness for which said Chase National Bank may have a lawful lien upon said bonds, if any, the right and equity of the plaintiff be preserved, and appellee decreed to discharge said indebtedness from funds in his hands or that may come into his hands, other than said bonds; that plaintiff be decreed to have a lien upon said bonds or their proceeds to the extent of said sum of $35,062.74, the same to be enforced by sale of said bond and/or application of their proceeds to the payment of said sum, and that, if the amount realized and available be insufficient to pay said sum, then that for the unpaid balance plaintiff be decreed to recover same from the assets of the bank in liquidation; and for such further or other relief in the premises as the nature of the circumstances of this cause may require and to the court shall seem meet.

By what occurred, as indicated by the above-recited allegations of the bill, when plaintiff arranged with the bank for the purchase of the stated amount of Liberty bonds, the previously existing relation of creditor and debtor between plaintiff and the Bank was terminated, with a result that from that time the balance to the credit of the plaintiff ceased to be subject to be checked on by him in favor of another or others than the bank, and the bank in a fiduciary capacity held

the amount of that balance to be used only in paying for the bonds it agreed to buy for the plaintiff. The bank's agreement to buy the bonds for the plaintiff having been complied with by it, and its right and duty to use the amount of that balance in paying for the bonds having accrued while it was a going concern, when its resources were subject to its disposition, in equity the Bank is to be treated as, prior to its suspension of business, having received the amount of that balance as a payment on the purchase price of the bonds ordered and bought, in other words, as having acted in accordance with the agreement by holding that amount to be appropriated to the payment of what was owing for the bonds purchased. An effect of the Chase National Bank complying with the order to buy the bonds, and notifying the bank of the purchase and that the price was charged to the latter, was that the title to the bonds was vested in the bank; and the bank, prior to its suspension of business, having purchased the bonds for the plaintiff, and having received the amount of the deposit to be paid for or on the bonds purchased, its title thereto in equity was transferred to, or acquired by, the plaintiff, and, at and prior to the time of the bank's suspension of business, it, by its agent, the Chase National Bank, had possession of the bonds, which were held for the plaintiff, subject to a lien thereon in favor of the Chase National Bank for whatever balance was owing to it by the bank, and to a lien thereon in favor of the bank for so much of the amount of the cost of the bonds as was in excess of the amount received by the bank for use in paying for them. Le Marchant v. Moore, 150 N. Y. 209, 44 N. E. 770; Richardson v. Shaw, 209 U. S. 365, 28 S. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981; Chase v. Petroleum Bank, 66 Pa. 169.

■ The arrangement between the plaintiff and the bank with reference to buying the Liberty bonds would not have been substantially different in effect if the plaintiff had checked out the amount on deposit to his credit and had then delivered that amount in cash to the bank upon the latter then agreeing to use that sum in buying the Liberty bonds desired by plaintiff. By what was done the relations of the parties with respect to the funds were so changed that thereafter the deposit was in the nature of a special one, having the trust feature of a special deposit. The bank was in the position of admitting that it held the amount so intrusted to it for use in paying for the Liberty bonds it agreed to buy for the plaintiff. By

that transaction the plaintiff became entitled to have that amount applied in paying for Liberty bonds bought pursuant to the agreement, and, upon the bank failing to segregate that amount and use it in paying for the bonds after it became its duty to do so, the plaintiff became entitled to enforce its right to have this amount applied in accordance with the agreement, though it was intermingled with the bank's general funds. The bank's funds went into the possession of its receiver, the defendant, subject to the preferential claim against those funds which existed in favor of the plaintiff when the bank suspended operations.

■ It was suggested in argument in behalf of the defendant that the plaintiff did not have a preferential claim against the funds of the bank which came to the possession of its receiver, the defendant, because those funds were not increased as a result of the arrangement for buying Liberty bonds. By that transaction the bank ceased to be the plaintiff's debtor for the amount which previously had been on deposit subject to check, and in effect accepted from the plaintiff the same amount in cash, to be held by it, not as its own property, but as an agent, charged with the duty or trust to use it in paying for the bonds to be purchased, and of keeping the amount so received separate from its general assets. An effect of the bank's failure to keep the sum of money so received by it segregated from its own assets and permitting it to be commingled with its general funds was that that sum was added to funds then owned by the bank, and the plaintiff became entitled to have the amount of his money delivered to the bank as agent withdrawn from the bank's general funds with which it was commingled, and used in the way the bank was obligated to use it. The assets of the bank having passed into the hands of the receiver, the defendant, increased by the amount of plaintiff's money wrongfully commingled therewith, those assets are held by the defendant subject to a preferential claim in favor of the plaintiff for the amount of his money which was so wrongfully commingled with funds owned by the bank. Goodyear Tire & Rubber Co. v. Hanover State Bank, 109 Kan. 772, 204 P. 992, 21 A. L. R. 677; Northwest Lumber Co. v. Scandinavian American Bank of Seattle, 130 Wash. 33, 225 P. 825, 39 A. L. R. 922; Bryan v. Coconut Grove Bank & Trust Co. (Fla.) 132 So. 481; Central National Bank v. Connecticut Mut. L. Ins. Co., 104 U. S. 54, 26 L. Ed. 693. The allegations of the bill show

that, as between the plaintiff and the defendant, the former in equity has title to the Liberty bonds mentioned, subject to liens thereon above referred to, and that plaintiff has a preferential claim, having priority over the claims of the bank's general creditors, against the assets of the bank held by the defendant as receiver for the amount of plaintiff's money received by the bank as above stated, and is entitled to recover that sum of money or to have it taken from the assets of the bank held by the defendant and applied in the way the bank was obligated to apply it. The plaintiff is entitled to have the aid of a court of equity for the establishment and enforcement of those rights. It follows that the above-mentioned ruling was erroneous.

As the Chase National Bank has not been made a party to this suit, whatever claims to or against the Liberty bonds mentioned it may have or assert are not now subject to be passed on.

The remedy which properly may be awarded in favor of the plaintiff may be affected by the reduction of the funds of the bank between the time when it in effect acknowledged its receipt from the plaintiff of the amount previously owing to him and the time when the bank's funds, including the sums held by it for the plaintiff and commingled with those funds, passed into the custody of the defendant, and by the existence of preferential claims against those funds in favor of another or others than the plaintiff. In re Bolognesi & Co. (C. C. A.) 254 F. 770, 773; Empire State Surety Co. v. Carroll County (C. C. A.) 194 F. 593. The bill contains no allegations as to the just mentioned matters. Such allegations are not requisite to the sufficiency of the bill to show that plaintiff was entitled to relief sought. Though the funds which the bank owned at the time it commingled therewith the sum it is chargeable with having received from the plaintiff for a specific purpose were wholly dissipated before the appointment of a receiver, the plaintiff was entitled to an adjudication on the question of the title or ownership of the Liberty bonds as between him and the defendant. If the bank's funds were reduced below the amount so received from plaintiff between the time when the bank became chargeable with the receipt of the plaintiff's money to be used in buying the bonds and the date of the passing of the bank's assets into the hands of the receiver, or if another or others have preferential claims against those assets, the facts

in regard to those matters perhaps may be set up by way of defense. Moreland v. Brown (C. C. A.) 86 F. 257.

Because of the above-mentioned error, the decree appealed from is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.