**SCHUMACHER v. BRINSON.**

No. 3183.

Circuit Court of Appeals, Fourth Circuit.

Oct. 12, 1931.

Julius F. Duncan, of Beaufort, N. C. (J. O. Carr, of Wilmington, N. C., on the brief), for appellant.

L. I. Moore, of New Bern, N. C. (Moore & Dunn, of New Bern, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal by the receiver of the failed First National Bank of New Bern, N. C., from a decree holding that the funds coming into his hands were charged with a trust in favor of the complainant, Charles J. Brinson, to the extent of $3,964.60, and directing that he pay this amount to complainant from such funds. The complainant contends that he intrusted $3,964.60 to the bank for the purchase in his behalf of United States bonds which the bank failed to purchase. The receiver admits that complainant had this amount on deposit in the bank and that his account was charged with the amount under a promise to apply same in the purchase of bonds for him; but denies that the assets of the bank were augmented as a result thereof or that complainant has traced any moneys held in trust for him into funds coming into the hands of the receiver.

The facts are that the failed bank was engaged in the business of purchasing bonds for its customers and kept a regular account of funds delivered to it for that purpose. On October 10, 1929 complainant arranged with the officials of the bank to purchase bonds for him and was advised to bring in the necessary money and they would be purchased. He already had $1,961.31 on deposit to his credit, and on October 14th, to provide the additional funds necessary, he deposited to his account $2,100, in the form of a check drawn on the Eastern Bank & Trust Company. On October 19th he was notified that his account had been charged with $3,964.60 for the purchase of the bonds, and the records of the bank show that his account was actually charged with this amount on October 21st and that on the same date the bond account was credited with a deposit of a like amount. The bonds were never in fact purchased, and the bank closed its doors on October 26th.

At the time of the closing of the bank its cash and cash items amounted to $27,063.98, of which $14,658.18 was actual cash. On Oc-

tober 14th cash and cash items were $44,947.-46 and cash $22,831.13. On October 19th they were $32,589.51 and $15,982.54, respectively. On October 21st they were $42,232.39 and $22,246.43. At no time during the period in question did cash and cash items fall below $27,000 or actual cash below $14,000.

With respect to the $2,100 check drawn by plaintiff on the Eastern Bank & Trust Company, it appears that this was used by the failed bank in a clearance on October 15th, in which the failed bank received from the Eastern Bank & Trust Company $5,801.-09 over and above the items which that bank presented against it. This $5,801.09 was in turn used by the failed bank in clearing with the Bank of Commerce & Trusts of Norfolk, and its balance with that bank, after the clearance, was exceeding $10,000.

It would seem clear that as a result of the deposit by plaintiff of the $2,100 check the assets of the failed bank were augmented by that amount at the time; but we need not go into this matter, as we are satisfied that upon an entirely different principle complainant is entitled to the relief which he seeks. He unquestionably had to his credit on October 19th more than enough money to pay for the bonds. On that date the bank agreed to charge his account with the amount necessary to make the purchase and to use the funds so derived for that purpose. It actually did so charge his account, at the same time crediting its bond account with a like sum. When these transactions occurred it had in its vaults cash far in excess of the amount necessary for the purchase of the bonds; and we think that as a result of the agreement a trust was impressed upon this cash to the extent of the amount necessary to make the purchase.

There can be no question but that if complainant had actually paid over the cash necessary to purchase the bonds, the bank would have taken same as a trust fund, and if it had mingled same with the cash in its vaults, the whole would have been impressed with a trust in favor of complainant to the extent of the trust fund received. See Schumacher, Receiver, v. Harriett (C. C. A.) 52 F. (2d) 817, this day decided. It can make no difference that, instead of cashing a check and then delivering the money to the bank for the purchase of the bonds, he allowed his account to be charged with the amount necessary. The bank had on hand funds more than sufficient for the purpose, and by the agreement with complainant they were impressed with a trust in his favor. Davis v. McNair (C. C. A.

5th) 48 F. (2d) 494, 496; State v. Grills, 35 R. I. 70, 85 A. 281, 283; Northwestern Lumber Co. v. Scandinavian American Bank, 130 Wash. 33, 226 P. 825, 829, 39 A. L. R. 922; State v. Exchange Bank of Bristow, 112 Neb. 834, 201 N. W. 895, 896.

In State v. Grills, supra, 35 R. I. 70, 85 A. 281, 283, the rule applicable in such case is well stated as follows: "The ordinary relation of a banker and his customer is that of debtor and creditor as to the deposits made by the customer with the banker. This relation, arising upon a general deposit, may be changed as to the whole or a part of such general deposit. Without actual delivery to the customer, and a redeposit by him for a special purpose, such general deposit by agreement may be converted into a special deposit and become a fund in the hands of the banker with which he is intrusted for the specific purpose named in the agreement creating the special deposit. Such fund is impressed with a trust, the violation of which is a fraud."

The reason underlying the rule is that, by agreement between the parties, a general deposit may be converted into a special deposit (Morse on Banks and Banking [6th Ed.] vol. 1, § 188, p. 575), and that a special deposit is in the nature of a trust toward which the bank occupies the position of a trustee. In re Gans & Klein (D. C.) 14 F. (2d) 116, 117; Morse on Banks & Banking (6th Ed.) vol. 1, § 325, p. 757; 3 R. C. L. 558.

In Davis v. McNair, supra, the facts were very similar to those in the case at bar. A bank had agreed to purchase bonds for a depositor and to charge same against his deposit account. The funds on deposit were more than sufficient to pay for the bonds; and the amount necessary to pay for same was by agreement withdrawn from the checking right of the depositor. In holding that a trust was created, the Circuit Court of Appeals, speaking through Judge Walker, said: "The arrangement between the plaintiff and the bank with reference to buying the Liberty bonds would not have been substantially different in effect if the plaintiff had checked out the amount on deposit to his credit and had then delivered that amount in cash to the bank upon the latter then agreeing to use that sum in buying the Liberty bonds desired by plaintiff. By what was done the relations of the parties with respect to the funds were so changed that thereafter the deposit was in the nature of a special one, having the trust feature of a special deposit."

It should be noted that we are not dealing

with a trust asserted on the ground that the assets of the bank have been augmented by a payment made to it. In such cases it is held that the receipt by the bank of a check drawn against the account of a depositor does not augment its assets. Ellerbe v. Studebaker Corporation of America (C. C. A.) 21 F. (2d) 993, 995 and cases there cited. What we have is in effect an agreement by the bank that a definite amount of the funds in its possession shall be held in trust for a specified purpose. In other words, what the record discloses is, not a shifting of credits, but the creation of a trust with respect to funds already in the bank's possession.

On the same principle the case is to be distinguished from that which would have been presented by a mere breach of agreement on the part of the bank to purchase bonds for complainant. If nothing more had occurred than that the bank had agreed to purchase bonds for him to be paid for later out of funds on deposit, it may well be that no trust would have arisen. But something more did occur. The bank charged his account with the price of the bonds and credited its bond account with the amount charged. In other words, it paid to itself the money necessary for the purchase of the bonds and charged itself with same as trustee. As it had in its vaults the funds to carry through the transaction as entered on its books, and as equity regards that as done which should have been done, funds to an amount necessary to purchase the bonds must be deemed to have been held in trust for that purpose.

As stated above, the cash funds in the bank never fell below what was necessary to discharge this trust. It is clear, therefore, that the funds which passed into the hands of the receiver were impressed with a trust to that extent in favor of complainant. Schumacher, Trustee, v. Harriett, supra; Poisson v. Williams, Receiver (D. C.) 15 F.(2d) 582.

The decree of the court below will be affirmed.

Affirmed.