## OESTERREICHER v. McNAIR.
### No. 678.

District Court, S. D. Florida.
Jan. 7, 1932.

Crawford & May, of Jacksonville, Fla., for plaintiff.

Frank D. Upchurch, of St. Augustine, Fla., for defendant.

STRUM, District Judge.

This is a suit in equity to establish and recover, as a preferred claim against the receiver of the First National Bank of St. Augustine, the sum of $1,326.

Prior to July 22, 1929, plaintiff had on deposit with said bank $1,300, evidenced by a certificate of deposit. On that day plaintiff went to the bank, called on Mr. White, its vice president and cashier, indorsed the certificate of deposit in his presence, and delivered the same to said officer of the bank, with the request that the bank purchase Liberty bonds in the face amount of $1,300, to be paid for with the money represented by the surrendered certificate. At the same time, plaintiff further directed said officer that, if the bank did not get the bonds, the certificate of deposit should be "cashed" for plaintiff. The certificate of deposit, so indorsed, was accepted by the bank, through its said officer, for the purposes and pursuant to the instructions stated. The bank apparently undertook to purchase the bonds through Chase National Bank of New York, but on the morning of July 24, 1929, about 9:30 a. m., or a little later, an officer of the Chase National called the president of the St. Augustine bank on long-distance phone, and advised that the St. Augustine bank's account with the Chase National was overdrawn, and that the Chase National would not accept any further orders for bonds for the accounts of the customers of the St. Augustine bank.

Mr. Puller, president of the St. Augustine bank, immediately communicated these facts to Mr. White, vice president and cashier. In accordance with the alternative directions of plaintiff, Mr. White immediately cashed the certificate of deposit, receiving from one of the paying tellers of the bank, in exchange for the surrendered certificate, the sum of $1,326, the said $26 representing accrued interest, and immediately "placed the money in an envelope and placed same in a box on the top shelf of the book vault."

At about 10 o'clock on the morning of July 24, 1929, the president of the St. Augustine bank called a meeting of the board of directors, which meeting assembled about 10:30 and adjourned shortly before 11:30 a. m. Pursuant to a resolution then passed,

the bank suspended and was closed about 11:30 a. m. July 24, 1929. When he cashed the certificate of deposit about 9:30 to 10 o'clock a. m. on July 24, 1929, Mr. White probably knew of the bank's precarious condition.

When the receiver took charge of the bank, Mr. White called the receiver's attention to the envelope above mentioned, and explained the circumstances, but the receiver placed the money with the general cash funds of the bank.

Amongst other things, defendant contends that the cashing of the certificate was an unlawful attempt to prefer plaintiff over general creditors contrary to section 5242, Rev. St., 12 USCA § 91.

In their legal consequences, the facts of this case are the same as those in Davis v. McNair (C. C. A.) 48 F.(2d) 494, by which decision this case is ruled. See, also, Bryan v. Coconut Grove Bank & Trust Co. (Fla.) 132 So. 481; In re Bolognesi & Co. (C. C. A.) 254 F. 770.

Equity regards that as done which should have been done. Equity regards substance, not form. The status of these parties was fixed by the transactions of July 22, 1929. Theretofore the relationship was that of debtor and creditor. When, however, on that date the bank, through its authorized agent, accepted the indorsed certificate of deposit in the circumstances and subject to the express directions above stated, and those alone, the relationship of debtor and creditor ceased. A fiduciary relationship of principal and agent, or of bailor and bailee, was then created and still existed when the bank suspended, the bank thereafter holding the money in the new status and no other. Title to the money was in the plaintiff, and remained so when the bank closed. Consequently, the receiver never acquired title.

In legal contemplation, the situation is the same as if plaintiff on the morning of July 22, 1929, had presented his certificate of deposit to a paying teller and had received actual cash over the counter therefor, immediately returning the same to the bank's cashier and agent, sacked and sealed, with express instructions to buy Liberty bonds with it, the bank receiving and accepting the same for that purpose and in that status alone. In legal contemplation, the money was severed from the bank's property on July 22, 1929.

This fund, in money, physically segregated and identified as a specific fund, not the property of the bank, but in its custody as agent or bailee only, passed intact to the receiver, and was wrongfully commingled by him with the bank's general cash. Thus, there was a clear augmentation. As the status of the parties had been fixed in good faith two days before the bank's directors determined to close, the cashing of the certificate pursuant to the directions under which it was received by the bank was not an attempt to unlawfully prefer plaintiff. Such action was pursuant to and in furtherance of the bank's duty as agent or bailee under the instructions of the owner of the fund given and accepted two days before, at which time the certificate, in legal contemplation, was cashed and title to the proceeds passed to plaintiff. Since its acceptance of the surrendered certificate on July 22, 1929, the bank was in no sense plaintiff's debtor, but was his agent or bailee, holding this fund in a fiduciary capacity, title thereto being in plaintiff. Plaintiff is therefore entitled to the specific fund made up of his money, or its equivalent.

When the bank closed, it had cash on hand in the sum of $25,502.35, and credits with other banks of $25,991.62. The amount of cash in the receiver's hands when the testimony was taken was $160,000. Preferred claims filed with the receiver aggregate $68,309.30, of which $2,998.43 have been allowed by the comptroller, and one claim for $25,000 has heretofore been denied by this court.

Prior to the closing of the bank, and while it still retained control of its affairs, there was a complete physical severance of this sum of $1,326 from the moneys of the bank. It was physically allocated to a specific and identified fund. This fund passed intact to the receiver, and was thereafter wrongfully commingled by him with the general cash of the bank, into which latter funds the specific fund has been clearly traced. This is, therefore, a proper case for a decree that plaintiff be paid in full from the specific sum so passing to the receiver, or, if the same has lost its identity subsequent to the receivership by being commingled with the bank's general cash, that then the plaintiff be paid an equivalent sum from said general cash, into which the specific fund is clearly traced, and that such payment be made prior to the claims of general creditors. Peters v. Bain, 133 U. S. 670, 10 S. Ct. 354, 33 L. Ed. 696; In re Bolognesi & Co. (C. C. A.) 254 F. 770; Empire State

Surety Co. v. Carroll County (C. C. A.) 194 F. 593; Moreland v. Brown (C. C. A.) 86 F. 257; Blumenfeld v. Union Nat. Bank (C. C. A.) 38 F.(2d) 455; Brennan v. Tillinghast (C. C. A.) 201 F. 609.

A decree will be entered accordingly.