## SEABORN v. RENO NAT. BANK et al.

### No. 2644.

District Court, D. Nevada.
Sept. 28, 1937.

Merwyn Brown, of Winnemucca, Nev., and William Kearney, of Reno, Nev., for plaintiff.

N. J. Barry, of Reno, Nev., for defendants.

NORCROSS, District Judge.

Plaintiff's complaint prays for judgment against defendants for a preferred claim in the principal sum of $2,514.82. Defendants by answer deny such liability.

The case was submitted upon oral testimony and an agreed statement of certain facts. The material facts, as they appear from the statement and testimony,

are as follows: The Winnemucca State Bank & Trust Company was taken over by the state bank examiner on January 4, 1932. On January 14, 1932, the bank examiner was by the state district court appointed receiver of the said bank and immediately qualified. On January 4, 1932, there was on deposit in the Reno National Bank to the credit of said Winnemucca State Bank the sum of $2,514.82. On taking over the Winnemucca Bank, the state bank examiner sent a telegram to the Reno National Bank which telegram was duly received. The telegram reads as follows:

"January 4, 1932.

"Reno National Bank
"Reno, Nevada.

"I have this day taken possession of the Winnemucca State Bank and Trust Company Winnemucca Nevada Stop Please forward Credit Balance per your books also statement.

"E. J. Seaborn
"State Bank Examiner."

The following is quoted from the agreed statement of facts: "That the said money on deposit, as aforesaid, in the sum of $2,514.82 was not forwarded to E. J. Seaborn, as said State Bank Examiner; that thereafter on or about the 8th day of January, 1932, said E. J. Seaborn called in person at the Reno National Bank at Reno, Nevada, and discussed said telegram with P. L. Nelson, Cashier, of the Reno National Bank, and that at said time and place said P. L. Nelson, as Cashier, admitted the receipt of said telegram and admitted that said telegram was understood by him, as said Cashier of said Reno National Bank, as a demand upon said bank for the payment of said deposit in the sum of $2,514.82, but stated that remittance of said deposit was not made on account of oversight and neglect on the part of said bank; that at said time and place said P. L. Nelson, as Cashier of the Reno National Bank advised said E. J. Seaborn, as said State Bank Examiner, and assured him that said deposit in the Reno National Bank in the sum of $2,514.82 would be transferred from the Reno National Bank to the United Nevada Bank, pursuant to the request of said E. J. Seaborn, without check, draft, or any other or further demand, by interchange of charge and credit between said banks, with the understanding and for the purpose of complying with Section 707, Nevada Compiled Laws

1929, in order to place said money on deposit in a bank organized under the laws of the State of Nevada, and designated by the State Banking Board, which bank had given bonds to secure the payment of such deposits on demand; that at said time and place the provisions of Section 707, Nevada Compiled Laws 1929 were discussed by said E. J. Seaborn with said P. L. Nelson, and said P. L. Nelson was fully apprised and acquainted with the necessity of transferring said funds from the Reno National Bank to the United Nevada Bank in order for said E. J. Seaborn, as said State Bank Examiner to comply with the laws of the State of Nevada then in full force and effect concerning the place of deposit of moneys from a closed state bank; that at said time and place the said P. L. Nelson admitted that he understood the import and meaning of said telegram, * * * and admitted that said telegram was a demand upon the Reno National Bank for payment of the deposit of the Winnemucca State Bank and Trust Company in a usual and customary banking manner. * * * That * * * on or about the 1st day of February, 1932, said E. J. Seaborn called at the Reno National Bank and again talked with said P. L. Nelson, Cashier of the Reno National Bank, with reference to said deposit in the sum of $2,514.82 and learned that the same had not been transferred to the United Nevada Bank in accordance with the previous understanding; that at said time and place said P. L. Nelson assured said E. J. Seaborn that said deposit in the sum of $2,514.82 would be transferred to the United Nevada Bank to said E. J. Seaborn, as State Bank Examiner in charge of the Winnemucca State Bank and Trust Company and as receiver of the Winnemucca State Bank and Trust Company. That subsequent thereto said E. J. Seaborn assumed that said transfer had been made in accordance with the assurances given him by the said P. L. Nelson, as Cashier of said The Reno National Bank; that said Reno National Bank failed, refused and neglected to remit, forward, or transfer at any time said balance on deposit in said Reno National Bank in the sum of $2,514.82. That the fact said deposit had not been transferred to plaintiff's account in the United Nevada Bank as promised and agreed by said P. L. Nelson, Cashier of the Reno National Bank, did not come to the attention of plaintiff until after

said Reno National Bank closed, and defendant, W. J. Tobin, was appointed receiver thereof. That under and by virtue of Section 707, Nevada Compiled Laws, 1929, it became the duty of said E. J. Seaborn as such State Bank Examiner to deposit said funds on deposit in The Reno National Bank of Reno, Nevada, in the sum of $2,514.82, as aforesaid, in a bank of deposit organized and existing under the laws of the State of Nevada, and designated by the State Banking Board, * * * That on and immediately prior to the 4th day of January, 1932, and on each and every day thereafter and up to and including the 9th day of December, 1932, at which time said W. J. Tobin took charge of the assets and property of said bank, as Receiver thereof, there was at all times on hand among the assets of said bank and available for payment to the depositors and creditors of the said The Reno National Bank, more than the sum of $20,000.00 cash aside from cash items and deposit credits in solvent banks, on each and every day during said period of time, all of which was taken possession of and came into the hands of said defendant, W. J. Tobin, as Receiver of said Reno National Bank."

Following the submission of the agreed statement of facts it was agreed by counsel that "the account," but not the "identical money that was deposited," came into the possession of the defendant receiver.

A witness called by defendants testified that at the times in question he was chief clerk of the Reno National Bank; that as such clerk he had charge of making out bank statements; that it was not only a custom but a hard and fast rule that generally every month, but at least every ninety days, statements of all bank accounts were mailed out; that he mailed some of the statements personally addressed to the Winnemucca State Bank & Trust Company. The receiver of the Reno National Bank testified that when he took charge of the bank December 9, 1932, he found certain statements in said bank. These statements were admitted in evidence and showed the monthly accounts of the said Winnemucca Bank from January to October, 1932, inclusive.

The plaintiff receiver testified that he received none of the statements referred to by the witnesses for defendants but could not say that they had not been sent to the Winnemucca Bank where he had an assistant at times; that his assistant made up monthly statements which showed an item due from banks and bankers so much money and that it was his assumption only the new bank account was entered in this case, but, as a matter of fact, it was a consolidation of the new bank account and this old one; that all he knew was the total amount due from banks and bankers and the figures showed the correct amount; that his assistant was only a part time assistant and that was a very busy period; that he did not get to him very often.

From the foregoing facts it appears that the plaintiff, as state bank examiner, upon taking possession of the Winnemucca State Bank & Trust Company, immediately sent a telegram to the Reno National Bank advising that bank that as such examiner he had taken possession of said bank and to forward credit balance as per the books of the Reno National Bank, also, statement; that later, once after his appointment as receiver, he twice called at the Reno National Bank in respect to the deposit of said Winnemucca Bank therein and upon each occasion was advised by the cashier thereof that the telegram had been received and was understood by him as a demand upon said bank for the payment of said deposit in the sum of $2,514.82; that without any further demand the deposit would be transferred to the United Nevada Bank in pursuance of the request of plaintiff.

No question has been raised respecting the form of demand. It was recognized by the cashier as being sufficient and that is controlling. No question has been raised with respect to the authority of the cashier to bind the bank in respect to his assurance that the deposit in question would be transferred to the United Nevada Bank. He clearly had such authority. Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 604, 19 L.Ed. 1008; Warner v. Penoyer (C.C.A.) 91 F. 587, 44 L.R.A. 761; City National Bank v. Chemical National Bank (C.C.A.) 80 F. 859; 7 C.J. 786. The transmission of funds from one bank to another is an important and essential function of national banks which, upon instructions or agreement, it is its duty to carry out. Goshorn v. People's National Bank, 32 Ind.App. 428, 69 N.E. 185, 102 Am.St.Rep. 248; 7 C.J. 814.

■ The telegram by plaintiff to the Reno National Bank, the subsequent agreement of the cashier of the bank to transfer the account, and the failure to comply therewith had the effect of changing the legal status of the parties in interest from that of debtor and creditor to that of trustee and cestui que trustent, and the deposit, upon such demand, agreement, and failure to comply therewith, immediately became a trust fund held by the Reno National Bank. Dixon v. Hopkins (C.C.A.) 56 F. (2d) 783; Davis v. McNair (C.C.A.) 48 F.(2d) 494; Schumacher v. Harriett (C. C.A.) 52 F.(2d) 817; Schumacher v. Brinson (C.C.A.) 52 F.(2d) 821; MacDonald v. Guy (C.C.A.) 63 F.(2d) 334, 337; Moreland v. Brown (C.C.A.) 86 F. 257; Massey v. Fisher (C.C.) 62 F. 958; Illinois Trust, etc., Bank v. Buffalo First Nat. Bank (C.C.) 15 F. 858; Kahmann v. Moberly, 229 Mo.App. 346, 77 S.W.(2d) 858, 861; Beatty v. Guggenheim Exp. Co., 225 N.Y. 380, 122 N.E. 378, 380; Germantown Trust Co. v. Powell, 265 Pa. 71, 108 A. 441; Pomeroy's Equity Jur. (4th Ed.) § 1053; 7 C.J. 630–633; 65 C.J. 223, § 14.

The case of Kahmann v. Moberly, supra, involved a state of facts quite similar to those of the instant case. From the opinion in that case we quote: "The plaintiff had the right to, and did, demand payment not later than February 1, 1933, and the bank was legally bound to pay it then, and could have done so as we have seen. The refusal of the bank to pay converted, out of the assets, the amount of plaintiff's debt into a trust fund for them. If the said fund later passed into the hands of the commissioner of finance, it went there impressed with the trust which entitled the owners to a preference. Bank of Poplar Bluff v. Millspaugh, 313 Mo. 412, 281 S.W. 733, 47 A.L.R. 754. The essentials necessary to create a preference are (1) right to demand; (2) actual demand; (3) duty to pay funds available to pay; (4) refusal to pay; and (5) consequent augmentation of assets in hands of commissioner. Claxton v. Cantley, Com'r (Mo. App.) 297 S.W. 975; Johnson v. Farmers' Bank of Clarksdale, 223 Mo.App. 513, 11 S.W.(2d) 1090; Hiatt v. Miller Bank, 224 Mo.App. 1040; 34 S.W.(2d) 532. Likewise this is true where the bank fails to obey depositors' instructions. McPheeters v. Scott County Bank (Mo.App.) 63 S.W. (2d) 456."

Counsel for defendant cites the rule as set forth in the case of First Nat. Bank of Chicago v. Selden, 120 F. 212, 215, 62 L.R.A. 559, reading: "The moment the Niles bank went into the hands of the receiver, the federal law became the law of the distribution of its assets. In no other way could there be unity of administration, and a carrying out of the federal mandate of equality."

■ The rule cited does not affect the controlling facts in this case. While the reason for the demand made by the state bank examiner, plaintiff receiver, and the occasion for the agreement made by the cashier of the Reno National Bank to transfer the balance of the deposit to the United Nevada Bank, may have been influenced or occasioned by the state law requiring receivers of state banks to deposit funds thereof in other state banks providing insurance of such deposits, the controlling facts are simply that Mr. Seaborn both as examiner and receiver had the right to make the demand, and the cashier of the Reno National Bank had the right to recognize such demand and to make the agreement in pursuance thereof to transfer the balance of the deposit to the United Nevada Bank. As before stated, this demand, agreement, and failure to comply therewith changed the relationship of the parties from that of debtor and creditor to that of trustee and cestui que trustent. As the agreement to transfer was never carried out, the trust relationship was created and continued and was in effect when the defendant receiver took over the assets of the Reno National Bank. The receiver, therefore, stands in the same position as the bank. Rankin v. City National Bank, 208 U.S. 541, 28 S.Ct. 346, 52 L.Ed. 610.

■ It is contended on behalf of defendant that, regardless of a trust relation being created, plaintiff is not entitled to a preference because the creation of the trust did not effect an augmentation of assets in the hands of the defendant receiver. It is true that if there had been no demand for payment by the state bank examiner or, as the facts disclose, such demand was not complied with, then the total amount of cash in the Reno National Bank which came into the possession of the defendant receiver was the same as it would have been had no such demand been made or, if made, not complied with. It is also

true that, if such demand had been complied with, the total of money in the Reno National Bank at the time defendant receiver took possession would have been less by the amount of the Winnemucca Bank deposit than the amount actually so taken over by the defendant receiver. It is clear, we think, that where a demand is made by one having a right to so demand and such demand is not complied with, thus effecting a resulting trust and such trust funds become ipso facto commingled with other funds, the total of which continuously thereafter remaining many times greater than the amount in question, such funds coming into the possession of the receiver and subject to the claims of general creditors may be said to be augmented by the trust funds so commingled therewith.

 Plaintiff is entitled to judgment as prayed for except in the matter of interest on the trust fund from the date of demand. Trust funds coming into the possession of the receiver of the Reno National Bank are not subject to an additional interest charge. White v. Knox, 111 U.S. 784, 4 S.Ct. 686, 28 L.Ed. 603; Kershaw v. Jenkins (C.C.A.) 71 F.(2d) 647, 650; People's Nat. Bank v. Payne (C.C.A.) 26 F.(2d) 208; People's Nat. Bank v. Moore (C.C.A.) 25 F.(2d) 599, 601.

Plaintiff is entitled to judgment for the amount of the trust, $2,514.82, and costs of suit.

Judgment will be entered accordingly.